### In re WYNWOOD MERCANTILE CORPORATION, Debtor.

### Bankruptcy No. 87–02274–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

Sept. 19, 1987.

Raymond B. Ray, Fort Lauderdale, Fla., for receiver.

Chad P. Pugatch, Fort Lauderdale, Fla., for debtor.

William Nortman, Receiver, Nortman & Bloom, P.A., Miami, Fla.

Thomas E. Glick, Asst. Gen. Counsel, Office of the Comptroller, State of Florida, Miami, Fla.

## ORDER AND MEMORANDUM OPINION DISMISSING CHAPTER 11 PETITION

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE having come to be heard on September 3, 1987, on the motion of William Nortman, Receiver of Wynwood Mercantile Corporation ("Wynwood") and the State of Florida, *ex rel.* Gerald Lewis Comptroller of the State of Florida, to voluntarily withdraw and dismiss a Chapter 11 Petition filed by Richard Schulze purportedly on behalf of Wynwood, and the Court having considered said motion, having conducted an evidentiary hearing and considering argument of counsel, finds and hereby orders, for the reasons set forth below, that the petition filed under Chapter 11 be dismissed as having been filed in bad faith.

## DISCUSSION

On May 5, 1987, the State of Florida acting through its Comptroller, Gerald Lewis, as head of the Department of Banking and Financing, which department is, among other things, responsible for enforcing the Florida securities laws as contained in the Florida Securities and Investor Protection Act, Chapter 517.011 *et seq.* Florida Statutes, ("Florida securities laws") instituted an enforcement proceeding against the debtor, Wynwood, its principals, namely Richard, Theodora and Otto Schulze and another individual. This action was instituted by the State of Florida pursuant to the police power of the State, Section 517.-191(2) of the Florida Statutes in the Circuit Court of the 17th Judicial Circuit in Broward County, Florida, Case Number 87–12446–CG–Judge Cocalis. The State alleged various violations of the registration and anti-fraud provisions of the Florida securities law as well as violations of the broker-dealer registration requirements of that law. The State sought a temporary and permanent injunction of further such violations and an order freezing the assets of the debtor and the other corporations and individual defendants.[1] The State also sought the appointment of an equity receiver of all of the defendants to take complete possession and ownership of their assets. See Section 517.191(2), Florida Statutes.

On the date the complaint was filed, May 5, 1987, the State Court issued an order, on an *ex parte* basis, resulting in the entry of a temporary injunction restraining and enjoining various violative activities as set forth above and appointing William Nortman as Equity Receiver of the defendants. In accordance with the duties imposed by the order of appointment, the Receiver, undertook certain actions, including taking possession and control of the books, record, premises and assets of the defendants, including Wynwood, and making an inventory of property obtained during the course of the Receivership. On August 4, 1987, the Receiver also filed a report of the affairs of the corporate defendants, which included, a detailed financial report and analysis of these entities prepared by the national accounting firm of Oppenheim, Appel, Dixon & Co.

On or about June 2, 1987, Richard Schulze, purportedly acting on behalf of Wynwood, filed a Chapter 11 petition in the United States Bankruptcy Court, Northern District of Georgia in Atlanta, Georgia, alleging therein that the debtors principal place of business was located in Atlanta, Georgia.

---

1. In addition to Wynwood and the Schulzes, the State also named as defendants Atlantic Monetary Corporation and Revere Union Corporation. These corporations were also controlled by the Schulzes and operated as the sales and administrative arms of Wynwood.

The filing of the bankruptcy petition in Atlanta, Georgia interfered with the course of the Receivership. It was necessary for the Receiver, in deference to the jurisdiction of the bankruptcy court, to cease activities relative to the dissolution of Wynwood. After the Receiver retained local counsel in Atlanta, Georgia, various motions were heard before the bankruptcy court in Atlanta, Georgia (the Honorable Stacey W. Cotton) which culminated in an order entered on June 25, 1987, which: denied a motion of the debtor to require the Receiver to turn over the accumulated assets; granted standing to the State of Florida and the Receiver to intervene in the bankruptcy proceeding; and, ordered the proceeding transferred from Atlanta, Georgia to Fort Lauderdale, Florida, Southern District of Florida.

Upon this proceeding sojourning back to the Southern District of Florida, the Receiver moved to dismiss this proceeding both for lack of standing to file the Chapter 11 petition and for the lack of good faith on the part of Richard Schulze, purportedly acting on behalf of Wynwood.

Pursuant to Court order a hearing on bad faith filing was held on September 3, 1987. The Court received extensive testimony from: Richard Schulze, individually and as the principal officer of the debtor who precipitated the Chapter 11 petition; William Nortman, the Equity Receiver; and Jules I. Bagdan, the partner of the major accounting firm which authored the underlying financial report that was filed with the Report of the Receiver. In addition, testimony was heard from two customers of Wynwood (Mrs. Coman and Dr. Abbadessa), and certain documents were offered into evidence.

▮ Based upon full consideration of all of the evidence presented and the legal authorities presented, the Court concludes that there is overwhelming evidence that the Chapter 11 proceeding was filed by Mr. Schulze in bad faith. The Court concludes that Wynwood, the debtor herein, was engaged in a "classic ponzi scheme" in connection with its extended delivery program for the alleged purchase and delivery of precious metals. The Court finds that Wynwood, is currently a corporation without any employees, secured creditors, or real property. That the schedules that Mr. Schulze caused Wynwood to file were grossly fraudulent.

The Court further finds that the debtors principal place of business was Fort Lauderdale, Florida, and not Atlanta, Georgia. That the debtors liabilities consisted of approximately Three Thousand Three Hundred (3,300) investor creditors allegedly owed approximately Twenty Eight Million Dollars ($28,000,000.00). That the debtors assets were: the approximately One Million Four Hundred Thousand Dollars ($1,400,000.00) in funds held by the Equity Receiver; approximately Two Million Three Hundred Thousand Dollars ($2,300,000.00) due from Atlantic Monetary Corporation and Revere Union Corporation (which apparently have no assets); and an unspecified bullion concentrate scheduled at Twenty Eight Million Dollars ($28,000,000.00). In this regard and not necessarily by limitation, the Court finds, as particularly outrageous, the listing as an asset of Wynwood, some unspecified bullion concentrate that was valued on the schedules at $28,000,000.00 which at trial Mr. Schulze explained was the product of an oral contract for certain bullion rights, which may no longer exist, purchased at a cost of $28,000.00.

The Court further finds that the evidence presented demonstrates, beyond peradventure, that the hedge account that Wynwood purported to maintain in connection with the extended delivery program, consistently operated at a loss and that it did not protect the interests of Wynwood's customers. Wynwood's reorganization proposal to continue to hedge would simply invoke a replication of the past.

The reorganization proposal put forth in the Chapter 11 proceeding by Wynwood and the filing in connection therewith was done solely as a defensive measure to a regulatory action instituted by the State of Florida and to interfere with and thwart the Receivership initiated by the State of Florida. All of these factors point to the bad faith filing of the proceedings. See, *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987).

In reaching the conclusion that the petition was filed in bad faith, the Court considered the extensive testimony of Mr. Schulze with respect to how Wynwood's program operated in the past and why he believed he could successfully hedge Wynwood's obligations in the future. After considering the testimony of Mr. Schulze, who conceded that the hedge accounts were maintained not for the benefit of customers of Wynwood but rather for Wynwood's own benefit, and the magnitude of Wynwood's obligation to customers, the Court concludes that there is a lack of any realistic possibility for an effective reorganization and that the suggestions that were put forth at the hearing as to the viability of a reorganization in this case is preposterous. The scope of liabilities of the debtor are such that there is no realistic possibility of an effective reorganization without the infusion of massive amounts of capital and there does not appear to be any source of such capital. See, *Albany Partners, Ltd. v. Westbrook, In re Albany Partners,* 749 F.2d 670 (11th Cir.1984). See also, *In re 299 Jack–Hemp Associates,* 20 B.R. 412, (Bkrtcy.S.D.N.Y.1982); *Meadowbrook Investors Group v. 30th Place, In re 30th Place,* 30 B.R. 503 (9th Cir. BAP 1983); *In re Spenard Ventures,* 18 B.R. 164 (Bkrtcy. D.Alaska 1982).

In this connection the Court notes the matter in which customer monies which were sent in to fund down payments and allegedly enlisted in hedge accounts by Wynwood were actually utilized to continue the "ponzi scheme". The Court finds that investments in trotters and pacers; a "Mexican gold deal", oil and gas limited partnerships and in an amusement center in Myrtle Beach, South Carolina are indicia of the quality, or more aptly, the lack of quality of the investments that were made by Wynwood in connection with their so called "non-market driven hedge activities". Indeed, as a result of the paucity of hedging by Wynwood, both of the "market-driven variety" and the "non-market driven variety", it appears that the excess of 3,000 customers of Wynwood, will be fortunate to receive three to five cents for each dollar that was invested.

In short, the filing of the bankruptcy petition was nothing more than a continued attempt to delay and frustrate the legitimate efforts of the State of Florida in the exercise of its regulatory rights. The outrageousness of the petition filed by the debtor including therein the alleged 28 million dollar asset involving ore concentrates, as discussed above, is such that the Court feels compelled to personally sanction Mr. Schulze for causing a bad faith filing. Accordingly, he is individually fined Ten Thousand Dollars ($10,000.00) and directed to pay the sum to the Clerk of the Bankruptcy Court forthwith.

Based on the foregoing, it is hereby ordered and adjudged:

That the bankruptcy proceeding filed by Wynwood be and hereby is dismissed as being filed in bad faith;

That Richard Schulze be and hereby is fined the sum of Ten Thousand Dollars ($10,000.00) and directed to immediately pay this sum to the Clerk of the Bankruptcy Court; and

It is further Ordered and Adjudged that the stay imposed against the debtor as a result of filing the bankruptcy petition be and hereby is dissolved.