In re James Joseph HUFF and Barbara Joe Huff, Debtors.

In re James John HUFF, Debtor.

Gerard A. McHALE as Court appointed administrator of Ashley Financial Corporation, Plaintiff,

v.

James John HUFF a/k/a James J. Huff and James Joseph Huff, Defendants.

Bankruptcy Nos. 88–05334–BKC–AJC, 89–00355–BKC–AJC.
Adv. Nos. 89–0192–BKC–AJC–A, 89–0103–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

Nov. 16, 1989.

Brian K. Goodkind, Miami, Fla., for McHale.

Edward R. Miller, Naples, Fla., for debtors.

## MEMORANDUM DECISION ON DEFENDANTS' MOTIONS TO DISMISS

A. JAY CRISTOL, Bankruptcy Judge.

This cause came before the Court on Defendants' Motions to Dismiss on August 23, 1989.

### I. PROCEDURAL BACKGROUND

Plaintiff, Gerard A. McHale, as court-appointed administrator of Ashley Financial Corporation ("McHale"), filed two separate adversary complaints seeking determinations of non-dischargeability, one against James Joseph Huff; the other against James John Huff. Those adversary proceedings were consolidated by order of this Court. Because the allegations of each complaint and the grounds stated in each of Defendants' motions to dismiss are identical, this opinion does not distinguish between the two.

### A. Allegations of Complaints

Plaintiff alleges the Defendants are not entitled to discharge of their debt to Ashley pursuant to 11 U.S.C. Section 523. Section 523 states that a debt is non-dischargeable if the debt is for (1) fraud while acting in a fiduciary capacity or for (2) wilful or malicious injury by the debtor to another entity.

### B. Grounds for motions to dismiss

The Defendants have moved to dismiss the complaints, asserting three grounds [1]: First, McHale lacks standing, as administrator of Ashley, to proceed with the claims asserted on behalf of Ashley because those claims benefit the creditors of Ashley; Second, Ashley has suffered no cognizable damages; and Third, Ashley is estopped from suing its officers and directors for fraud because Ashley participated in the fraud through the actions of those officers and directors.

For the reasons to be discussed below, this Court finds the Defendants' arguments unpersuasive and denies the Defendants' motions to dismiss.

---

1. The Court notes that of the three arguments raised at the hearing on the motions to dismiss, only the second argument, whether Ashley was damaged, was raised in Defendants' motions to dismiss. Although the Court addresses the merits of these arguments, these arguments were not plead and, as a result, even if meritorious would not properly be before the Court.

## II. FACTUAL ALLEGATIONS [2]

In approximately 1984, the Defendants were the principal shareholders, directors and officers of Ashley Financial Corporation ("Ashley"). The Defendants, through Ashley, began to sell interests in mortgage investments to the public and represented that the proceeds of the mortgage investments would be used for the acquisition and building of residential rental apartment buildings, and that the mortgage investments were 100% secured by real property.

### A. Fraud

The Defendants' representations were fraudulent. Defendants, contrary to their material representations, placed mortgages on Ashley's property which, in aggregate, greatly exceeded the then fair market value of that property. As a result, the investors were dependent upon the viability of Ashley to repay the uncollateralized portion of the mortgage investments. Although these investors were led to believe their investments were over-secured, the investments were in fact greatly under-secured.

### B. Security Law Violations

Contrary to Florida law, Defendants' sale of mortgage investments, by and through Ashley, was not registered as a securities offering. When the State of Florida, Office of the Comptroller ("Comptroller"), learned of the Defendants' illegal sales of securities, the Comptroller and Ashley entered into a stipulation to discontinue these illegal sales and to liquidate Ashley's properties and pay off the mortgage holders.

Instead of liquidating, the Defendants contacted the mortgage holders and offered them an exchange of their mortgage investments for shares of Ashley. The Defendants also began a public sale of the shares of Ashley. The Defendants knew the sale of these shares was also illegal, fraudulent, and in violation of Florida law.

The Defendants attempted to make their sale of securities look like a "private placement" by having their investors execute memoranda stating the investors had in excess of $1,000,000 of personal assets, when, in fact, the Defendants knew the investors did not have such assets. The Defendants also forged investors' signatures on such memoranda. The Defendants also fraudulently represented to the investors that Ashley would "go public", would pay cash dividends by January of the following year, and would be a safer investment and offer higher returns than the original mortgage investments.

The Defendants disseminated a "private placement memorandum" which misrepresented the financial worth of Ashley and which contained material omissions including an omission that Ashley had operated at a continual net loss since 1983, that Defendant James Huff had been the subject of at least 17 different lawsuits, both criminal and civil, between the period from 1972 to 1982, for, among other things, federal securities law violations, issuing worthless checks, and defaults on promissory notes and had in excess of $100,000 in judgments outstanding.

The sale of stock was part of the Defendants' "ponzi scheme". The stock was sold to enable Ashley to pay the mortgage debts as they came due since Ashley was undercapitalized. Ashley operated at a net loss from 1983 to 1987.

As a result of the above described fraudulent activities, Ashley's existence and operation was prolonged notwithstanding its insolvency. This prolonged corporate life enabled the Defendants to obtain salaries and loans to themselves and their family members in excess of $800,000.00.

### C. Appointment of administrator

When the Comptroller learned of the fraudulent and illegal sale of Ashley securities by the Defendants, the Comptroller filed a complaint in state court for permanent injunction, restitution, and disgorge-

---

**2.** The following facts are contained in or are fair inferences derived from the complaints and their exhibits.

ment of profits, which complaint is attached as Exhibit "B" to the complaints filed by the Plaintiff in these consolidated actions ("State Court Action"). By order of the state court dated October 13, 1987, copies of which are attached to each of the complaints as Exhibit "A", McHale was appointed administrator of Ashley ("Order Appointing Administrator"). McHale, as administrator of Ashley, is in the process of liquidating Ashley and now represents the interests of Ashley for the purpose of recovering all available assets for Ashley's creditors.

*D. Authority of administrator*

McHale was appointed pursuant to the authority of Chapter 517, Florida Statutes (1987) and pursuant to common law.

The Order Appointing Administrator provides, in part:

6. Said Administrator, through the authority of this court, is hereby granted the following duties and powers and pursuant to said duties and powers and the authority of this court ...

(b) Shall assume all rights and powers which AFC [Ashley] may have to manage, control, operate, maintain, possess or receive or to use income, earnings, rents, and profits with full power to *sue for, collect, receive and take into possession* all goods, chattels, *rights, credits, monies, effects*, lands and books of accounts and other papers; and prevent the withdrawal and misapplication of funds held or possessed by AFC *and determine the just and protect the interest of the shareholders and mortgage holders of AFC* ...

(i) Direct and oversee the liquidation of residential real estate assets of AFC and such other assets of AFC as deemed appropriate in such a manner as to maximize the proceeds for such assets *and thereby assure the repayment of mortgage holders and the conservation of the assets of AFC from [sic] the benefit of its creditors and shareholders.*"

(emphasis added).

*E. Rescission*

The state court determined that the Defendants, by and through Ashley, sold securities in violation of Chapter 517, Florida Statutes, and permitted all shareholders of Ashley to rescind their purchases and become creditors of Ashley. As a result of this rescission en masse, Ashley is now liable to its former shareholders for over $7,000,000.

## III. THE COURT APPOINTED ADMINISTRATOR HAS STANDING TO SUE DIRECTORS AND OFFICERS FOR FRAUD AGAINST CORPORATION

■ Whether a party has standing to bring an action is a preliminary matter to be decided on the basis of the pleadings filed in that particular case. *Yoder Bros., Inc. v. California–Florida Plant Corp.*, 537 F.2d 1347 (5th Cir.1976). When standing is challenged on the basis of the pleadings, the Court must accept as true all material allegations and construe them in favor of the party whose standing is challenged. *Pennell v. City of San Jose*, 485 U.S. 1, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988).

To determine whether McHale has standing to bring this action, this Court must determine if McHale (1) has the power to sue on behalf of Ashley and for the benefit of Ashley's creditors, and (2) has suffered actual injury at the hands of the Defendants, traceable to unlawful conduct and likely to be redressed by the relief sought. *Steele v. National FireArms Act Branch, et al.*, 755 F.2d 1410 (11th Cir.1985).

■ Taking the allegations of the complaints as true, this Court holds that McHale, as administrator of Ashley, has standing to bring this action on behalf of Ashley for the benefit of Ashley's creditors and has sufficiently alleged Ashley was damaged by Defendants' conduct.

*A. McHale, as court appointed administrator of Ashley, has the legal right to sue on behalf of Ashley and for the benefit of its creditors.*

There is no question an equity receiver [3] is the real party in interest and has stand-

ing to sue on behalf of the insolvent corporation. *In re Wynwood Mercantile Corp.,* 81 B.R. 689 (Bankr.S.D.Fla.1987) (Cristol, J.); *Matter of Ofty Corporation,* 44 B.R. 479 (Bankr.D.Del.1984); *In re Sun World Broadcasters, Inc.,* 5 B.R. 719 (Bankr.M.D. Fla.1980) (Proctor, J.).

■■ Included in the responsibilities of a receiver are the obligations to marshall all available assets and make fair and equitable distributions to the corporation's creditors. As a result, although the receiver does not succeed to causes of action vested personally in the creditors, it does have the responsibility and standing to act for the benefit of those creditors:

> It is a general rule that a receiver stands in the position of a representative and a protector of the interests of creditors, shareholders, depositors, and others, in the property of the receivership.... It has been said that receivers are not appointed primarily for the benefit of the officers or stockholders of a corporation, *but for the benefit of its creditors.*

65 Am.Jur.2d, Receivers, Section 139 (emphasis added).

> In case of breach of duty by directors and managing officers of a corporation, causing loss of its assets, the corporation may sue, and *in case of its insolvency, the action can be maintained by a receiver.* The receiver of an insolvent corporation may maintain an action to hold the directors liable for losses caused by their negligence, *although the caption of the bill states that he is suing for the benefit of all creditors of the corporation.*
>
> Equity has jurisdiction of receivers' suits against corporate directors or officers for negligence or wrongful acts.

66 Am.Jur.2d, Receivers, Section 449 (emphasis added).

The Supreme Court discussed a receiver's authority in a case factually similar to

the instant case. *McCandless v. Furlaud,* 296 U.S. 140, 56 S.Ct. 41, 80 L.Ed. 121 (1935). In *McCandless,* a promotor of a corporation used the corporate entity to perpetrate securities fraud on the public. The court said that the effect of the promoter's conduct was to saddle the company with liens beyond the value of its assets. The company became crippled and, indeed, insolvent at the outset of its business life. The Supreme Court addressed whether a receiver which had been appointed for that corporation could sue the directors and promoters of the corporation:

> There is no occasion to consider whether the corporation itself at the instance of new shareholders would be permitted to disaffirm the fraud and maintain a suit in equity for appropriate relief. We put that question by. *Enough that the receiver has the requisite capacity.* A court of equity has taken hold of the assets of this company, intangible assets as well as tangible, for administration as a trust in accordance with equitable principles. Included in those assets are monies fraudulently diverted to the prejudice of creditors.... *Precedents exist in cases of insolvency for a suit by a trustee as the representative of creditors,* and this though they became such after the securities were issued.... What is here is a tort growing out of fraudulent depletion of the assets by men chargeable as trustees if they have failed to act with honor.

*McCandless v. Furlaud,* 56 S.Ct. at 47–49 (emphasis added).

The Supreme Court noted that the receiver in that case, as the receiver in the instant case, did not purport to bring the investors' causes of action but was bringing a cause of action directly on behalf of the corporation. The Supreme Court stated:

> As we have striven to make clear, the receiver does not claim to have succeeded to the rights of bondholders or notehold-

---

**3.** Chapter 517, Florida Statutes provides for the appointment of a "receiver" or "administrator". Based upon a thorough review of Chapter 517, Florida Statutes, this Court finds the Florida legislature did not intend a substantive difference between the two titles. As a result, general common law on receiverships is applicable in the instant case.

ers to recover damages for deceit. *The wrong that is here redressed is the unlawful depletion of the assets whereby the company was made insolvent and the creditors were defrauded of their lawful rights and remedies.*

*McCandless v. Furlaud,* 56 S.Ct. at 50. *See also Meyers v. Moody,* 693 F.2d 1196 (5th Cir.1982) (receiver has standing to sue on behalf of corporation's shareholders, policyholders or creditors, therefore the defendant's challenges to standing are without merit); *Landy v. Federal Deposit Insurance Corporation,* 486 F.2d 139 (3rd Cir.1973) (the receiver, after his appointment, represents the bank, its stockholders and creditors); *Garner v. Pearson,* 374 F.Supp. 591 (D.C.M.D.Fla.1974) (liquidator represents the interests of the bank and its creditors); *Christian Broadcasting Network, Inc. v. Starr,* 401 So.2d 1152 (Fla. 5th DCA 1981) (receivership is conducted primarily for the benefit of creditors).

■ In addition to the general law discussed above, a receiver has the powers conferred upon him by statutes and by the rules, orders, and decrees of the court appointing him. *See* 44 Fla.Jur.2d, Receivers 30. Initially, it was not clear from the Order Appointing Administrator entered by the state court whether McHale had the authority to bring an action on behalf of the creditors of Ashley. However, the state court clarified McHale's authority to seek damages on behalf of Ashley's creditors, the very issue before this Court, by its order denying a motion to dismiss a counterclaim brought by McHale on behalf of Ashley's creditors.[4]

**B.  Ashley has alleged actual injury at the hands of the Defendants.**

The Complaint alleges the Defendants, as the former officers and directors of Ash-

ley, used Ashley as an instrument to perpetrate fraudulent and illegal activities against members of the investing public. The Complaint alleges that the Defendants' use of Ashley for these purposes, constitutes a fraudulent breach of the Defendants' fiduciary duties to Ashley and, as a result, the Defendants are liable to Ashley for the liabilities Ashley incurred as a result of this fraudulent breach of fiduciary duty.

**1.  Fraudulent breach of fiduciary duty**

■ In Florida, the officers and directors of a corporation owe a fiduciary duty to that corporation and are liable to that corporation for the breach of such duty. *Tillis v. United Parts, Inc.,* 395 So.2d 618 (Fla. 5th DCA 1981); and *B & J Holding Corp. v. Weiss,* 353 So.2d 141 (Fla. 3rd DCA 1977).

Judge Weaver in *In re F & C Services, Inc.,* 44 B.R. 863 (Bankr.S.D.Fla.1984) held that the principal of a corporation breached his fiduciary duties as director and officer of the corporation by failing to safeguard assets and engineering a fraudulent transfer. In that case, Judge Weaver noted that Section 607.111(4), Florida Statutes provides that "a director shall perform his duties as a director, ... in good faith, in a manner he reasonably believes to be in the best interests of the corporation, and with such care as an ordinary, prudent person in a like position would use under similar circumstances." *In re F & C Services, Inc.,* 44 B.R. at 874; Section 607.111(4), Fla.Stat. (1987).

■ A debtor whose breach of his fiduciary duty constitutes a fraud or defalcation

---

**4.**  This Court takes judicial notice of those pleadings filed in the State Court Action or, in the alternative, treats the Plaintiff's complaints as amended to include those pleadings as exhibits.

It should also be noted that although the administrator of Ashley is not a state agency, McHale was appointed as administrator pursuant to the request of a Florida state agency. Various courts have held that state agencies have standing to represent the interests of creditors and object to the discharge of the debts to

those creditors. *In re John DeFelice,* 77 B.R. 376 (Bankr.D.Conn.1987) (New York Attorney General has standing as creditor to object to discharge of debtor under New York Consumer Protection Statute); *In re Sclater,* 40 B.R. 594 (Bankr.E.D.Mich.1984) (Attorney General has standing under the doctrine of parens patriae to seek determination of nondischargeability of debtor.); and *In re Hemingway,* 39 B.R. 619 (Bankr.N.D.N.Y.1983).

may not be discharged of his debts to that corporation pursuant to Bankruptcy Code Section 523(a)(4): "(a) a discharge ... does not discharge an individual debtor from any debt—... (4) for fraud or defalcation while acting in a fiduciary capacity, ...". *See Matter of Good,* 33 B.R. 163 (Bankr.M. D.Fla.1983) (Paskay J.) (debtor as president of corporation owed that corporation a fiduciary duty. Where the fiduciary duty was breached, the debt owed to the corporation must be declared nondischargeable.) *See also In re Goldstein,* 66 B.R. 909 (Bankr. W.D.Pa.1986) (debtor's liability to corporation, for falsely representing the corporation owed no taxes, was not dischargeable in bankruptcy); and *In re Cowley,* 35 B.R. 526 (Bankr.D. Kansas 1983) (it has long been settled that a corporate officer is a "fiduciary" of the corporation within the meaning of Section 523(a)(4)).

### 2. Ashley alleges two distinct injuries sufficient to sustain standing.

■ First, there is no question that Ashley alleges it suffered a loss of $800,000 at the hands of the Defendants when they took from the corporation sums totalling that much for themselves and their family members. This alone is sufficient to sustain standing and Defendants' written and oral argument on their motions to dismiss are silent on this issue.

■ Second, Ashley was damaged by over $7,000,000 by virtue of the order of rescission requiring Ashley to rescind all transactions with its mortgage investors and shareholders due to fraud by the Defendants. However, Defendants argue that by the order of rescission, Ashley merely had to return the funds it fraudulently received back to investors and, therefore, could not be damaged.

When viewed in isolation, this argument may appear to have some merit. However, when viewed in the context of the Defendants' overall plan and scheme, it is clear that the damages alleged by McHale, if proven, are sufficient to state a claim against the Defendants. The Complaint alleges facts sufficient to prove the Defendants operated a classic "ponzi scheme".

A ponzi scheme is a scheme whereby a corporation operates and continues to operate at a loss. The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors. The effect of such a scheme is to put the corporation farther and farther into debt by incurring more and more liability and to give the corporation the false appearance of profitability in order to obtain new investors.

■ Ultimate proof of injury in fact is not required. To satisfy the standing requirement, it is sufficient if the allegations establish a legally cognizable injury. *Yoder Bros., Inc.,* 537 F.2d at 1360.

■ A corporation is damaged where its officers and directors fraudulently conceal its insolvency and allow the corporation to continue incurring more and more debt and become more and more insolvent. Such an action is not in the best interest of the corporation and is in breach of the directors' and officers' fiduciary duty to the corporation. The court in *In re Investors Funding Corp.,* stated:

> The thrust of the complaint is that the Danskers created the false appearance of fiscal salubrity to conceal their past acts of mismanagement and to raise capital for their further plundering. This complaint avers that this scheme was repeated through a number of cycles, each time driving IFC further into deficit and toward its ultimate financial ruin. PMM's attempt to highlight the Danskers' efforts to perpetuate the rosy picture of IFC in its financial statements is an incomplete appraisal of the total pattern of conduct of the Danskers, whose interests and conduct, as alleged in the complaint, were predominantly antagonistic to the interests of IFC.... A corporation is not a biological entity for which it can be presumed that any act which extends its existence is beneficial to it. The complaint plainly alleges that, as a result of Danskers' practices, IFC's financial situation was caused to deteriorate even further after 1971. Accepting

the allegations of the complaint as true, it is manifest that the prolonged artificial solvency of IFC benefitted only the Danskers and their confederates, not IFC.

*In re Investors Funding Corp.,* 523 F.Supp. 533, 541 (S.D.N.Y.1980).

*See Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983) ("Indeed, in most cases, it would be crucial that the insolvency of the corporation be disclosed, so that shareholders may exercise their right to dissolve the corporation in order to cut their losses.")

The allegations of the complaint in the instant case sufficiently establish Ashley was damaged. The complaint alleges Ashley operated at a net loss dating back as far as 1983 and that during this period Ashley paid the Defendants and their family members in excess of $800,000 as salaries and loans.

## IV.  McHALE IS NOT ESTOPPED BY THE DEFENDANTS' CONDUCT.

■ The third argument asserted as grounds for Defendants' motions to dismiss, that McHale is estopped from pursuing a claim for fraud because Ashley was a participant in that fraudulent conduct, is also unpersuasive. The authority presented by Defendants: *West Florida Land Co. v. Studebaker,* 37 Fla. 28, 19 So. 176 (1896); *Taco Bell of California v. Zappone,* 324 So.2d 121 (Fla. 2d DCA 1975); and *Ramel v. Chasebrook Construction Co.,* 135 So.2d 876 (Fla. 2d DCA 1961) supports the proposition that a corporation is liable to a third party for the fraudulent acts of its officers, but does not address whether the directors and officers are liable to a corporation for a fraud committed by them against that corporation.

■ The Defendants overlooked the principle of law that a receiver represents the rights of creditors and is not bound by former corporate officers' or directors' fraud. *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.,* 105 F.R.D. 125 (D.Minn. 1985).

In *Kempe v. Monitor Intermediaries, Inc.,* 785 F.2d 1443 (9th Cir.1986) the defen-

dants made the same argument that the Defendants assert in this cause, that the liquidator of the corporation lacked standing to bring the suit for fraud against the corporation because the defendants were alleged to have controlled the corporation and "one cannot deceive oneself". *Kempe v. Monitor Intermediaries, Inc.,* 785 F.2d at 1444. The *Kempe* court rejected that argument in reliance on the holding of *Schacht v. Brown,* 711 F.2d 1343, 1346–50 (7th Cir.1983).

■ In *Schacht,* the Seventh Circuit held that the receiver was not estopped from pursuing a claim on behalf of the corporation for damages resulting from the illegal activities of the corporation's directors because:

> ... the complaint in the instant case alleges a far-reaching scheme in which, as a consequence of the illegal activities of Reserve's directors and the outside defendants, Reserve was, *inter alia,* fraudulently continued in business past its point of insolvency and systematically looted of its most profitable and least risky business and more than $3 million in income—all actions which aggravated Reserve's insolvency. In no way can these results be described as beneficial to Reserve.

*Schacht v. Brown,* 711 F.2d at 1347–48. In addition, knowledge obtained by the officers and directors of a corporation, who are acting adversely to the interests of the corporation, are not imputable to that corporation. *Schacht v. Brown, supra.; In re Investors Funding Corp.,* 523 F.Supp. 533 (S.D.N.Y.1980); and *In re Wedtech Corp.,* 81 B.R. 240 (S.D.N.Y.1987).

## CONCLUSION

The Court having reviewed the pleadings, having heard argument of counsel, and being otherwise fully advised, finds McHale has standing to bring this action, is not estopped from bringing this action on behalf of Ashley, and has sufficiently alleged damages to state a cause of action.

IT IS THEREFORE, ORDERED AND ADJUDGED, Defendants' motions to dismiss are denied.

DONE AND ORDERED.