In re COLONIAL REALTY COMPANY,
Jonathan Googel, Benjamin Sisti,
Consolidated Debtors.

Hal M. HIRSCH, As Trustee of the Consolidated Estate of Colonial Realty Company, Jonathan Googel and Benjamin Sisti, Debtors, Plaintiff,

v.

James CAHILL, Defendant.

Bankruptcy No. 90–21980.
Adversary No. 93–6377.

United States Bankruptcy Court,
D. Connecticut.

July 22, 1997.

David M. Pollack, Howard P. Magaliff, Gainsburg & Hirsch, Purchase, NY for Plaintiff–Trustee.

Peter L. Truebner, Stamford, CT, for Defendant.

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

The matter before the court is the plaintiff-trustee's motion for summary judgment on a complaint he filed seeking recovery of alleged fraudulent transfers made to James Cahill, the defendant. Because the court concludes that genuine issues of material facts are in dispute, the motion will be denied.

### II.

Hal M. Hirsch, as Trustee of the Consolidated Estate of Colonial Realty Company ("Colonial"), Jonathan Googel ("Googel") and Benjamin Sisti ("Sisti") (together, "the debtors"), on July 12, 1993 filed a complaint asserting, *inter alia,* that certain prepetition commissions which the debtors paid to the defendant constituted fraudulent conveyances pursuant to Bankruptcy Code

§ 548(a)[1], and Connecticut statutory law under Bankruptcy Code § 544.[2] Colonial, a general partnership comprised of Googel and Sisti, was a real estate management company which syndicated real estate limited partnerships nationwide to thousands of investors. The debtors paid the commissions, totalling $59,921.03, to the defendant for his services in selling units to investors in these limited partnerships.

The trustee, with his summary judgment papers, filed a comprehensive affidavit of Martin E. Stauffer ("Stauffer"), a certified public accountant, which established Stauffer's credentials as an expert in his field. Stauffer averred that during the time period when the debtors paid the commissions, the debtors were insolvent and perpetrating an illegal "Ponzi" scheme[3] in their real estate syndication activities. Stauffer opined that the debtors' business depended on outside investor money to pay the promised returns to earlier investors in the limited partnerships which lacked sufficient profits to make these payments. The affidavit detailed the underpinnings for Stauffer's conclusions.

The trustee contends that if the court credits Stauffer's affidavit that the debtors operated a Ponzi scheme, such conclusion automatically satisfies the requirement that any transfers made by the debtors, such as the instant commissions to the defendant, which furthered the scheme constituted actual fraud and are recoverable transfers. *See Hayes v. Palm Seedlings Partners–A (In re Agricultural Research and Technology Group)*, 916 F.2d 528, 535 (9th Cir.1990) ("[T]he debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a ponzi scheme."). The trustee primarily relies upon a summary judgment holding in which the court, based upon affidavits, found a Ponzi scheme to exist and concluded that transfers made by the debtor to commission salesmen for helping to perpetuate the Ponzi scheme were recoverable fraudulent transfers. *See Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 438 (Bankr.N.D.Ill.1995).

The defendant's response, supported by his affidavit, is that even assuming the debtors operated a Ponzi scheme (which he does not concede), he "did not know it and was not involved", that the defendant was a "Registered Representative with Colonial Realty's broker-dealer", and that the monies the debtors paid to him were for "services rendered in good faith in accordance with the rules and regulations of NASD and the SEC." *Defendant's Affidavit* at ¶¶ 6, 7.

1.  Section 548(a) provides:

    (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

    (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

    (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

    (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

    11 U.S.C. § 548(a).

2.  The trustee in his memorandum of law states, and the court agrees, that the analysis under Bankruptcy Code § 548 of the transfers in question does not differ significantly from that which would be made under the applicable Connecticut fraudulent conveyance statute.

3.  The Second Circuit, in *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 n. 3 (2nd Cir. 1995), defined a Ponzi scheme as follows:

    'A ponzi scheme is a scheme whereby a corporation operates and continues to operate at a loss. The corporation gives the appearance of being profitable by obtaining new investors and using those investments to pay for the high premiums promised to earlier investors. The effect of such a scheme is to put the corporation farther and farther into debt by incurring more and more liability and to give the corporation the false appearance of profitability in order to obtain new investors.'

    (quoting from *McHale v. Huff (In re Huff)*, 109 B.R. 506, 512 (Bankr.S.D.Fla.1989)).

## III.

Bankruptcy Code § 548(c) [4], as do state fraudulent conveyance statutes generally, provides an exception to the voidability of fraudulent transfers in favor of a transferee that "takes for value and in good faith ... to the extent that such transferee ... gave value to the debtor in exchange for such transfer...." 11 U.S.C. § 548(c). Case law holds that, although no precise definition is possible, good faith requires that the transaction have the "earmarks of an arms-length bargain," *Bullard v. Aluminum Company of America,* 468 F.2d 11, 13 (7th Cir.1972), and that the transferee have no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others, *Consove v. Cohen (In re Roco Corporation),* 701 F.2d 978, 984 (1st Cir.1983). *See also,* 5 *Collier on Bankruptcy* ¶ 548.07[2][a] (15th ed. rev'd.1997) (" [G]ood faith requires an arm's length transaction, as well as the following three factors: (i) an honest belief in the propriety of the activities in question; (ii) no intent to take unconscionable advantage of others; and (iii) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others.") (citations omitted).

Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). The moving party had the burden of proving that no material facts are in dispute, and in considering such a motion, the court "must 'resolve all ambiguities and draw all reasonable inferences in favor' of the non-moving party...." *Mikinberg v. Baltic S.S. Co.,* 988 F.2d 327, 330 (2d Cir.1993) (*quoting Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). The court in deciding a summary judgment motion, " 'cannot *try* issues of fact, but can only determine whether there are issues of fact to be tried.' " *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (*quoting Empire Electronics Co. v. United States,* 311 F.2d 175, 179 (2d Cir. 1962) (emphasis in original)). Courts generally find summary judgment to be ill-suited for resolving cases involving allegations of intent to defraud. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2730 (2d ed.1983).

## IV.

The court, based upon the principles underlying summary judgment motions, concludes that summary judgment is not appropriate in this adversary proceeding. The defendant's affidavit places squarely in issue the defendant's claim that he is a good-faith transferee who gave value. The positions of the trustee and the defendant raise material issues as to the circumstances of payments of money by the debtors to the defendant. The *Randy* holding is not apposite in light of that court's apparent conclusion that the salespeople knowingly worked to advance the debtor's Ponzi scheme. Here, the defendant denies he had knowledge of a Ponzi scheme, if one existed.

The trustee's motion for summary judgment is denied. It is

SO ORDERED.

---

4. Section 548(c) provides:
   (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.
   11 U.S.C. § 548(c).