In re Anthony F. DIFABIO, Jr., Debtor.

**The Cadle Company, Plaintiff,**

v.

**Anthony F. DiFabio, Jr., Defendant.**

**Bankruptcy No. 03–21996.**
**Adversary No. 04–2016.**

United States Bankruptcy Court,
D. Connecticut.

Aug. 25, 2004.

---

Edward C. Taiman, Jr., Esq., Sabia & Hartley, LLC, Hartford, CT, for Plaintiff.

Thomas C. Boscarino, Esq., Boatman, Boscarino, Grasso & Twachtman, Glastonbury, CT, for Defendant—Debtor.

## RULING DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Anthony F. DiFabio, Jr. ("the debtor") filed a Chapter 7 petition on June 25, 2003. The Cadle Company ("the plaintiff"), a creditor asserting a claim in excess of $1,250,000, on February 12,2004, filed a two-count complaint asking the court to deny the debtor a discharge. The court, on June 16, 2004, after notice and a hearing, granted the plaintiff's motion for voluntary dismissal of the second count which sought denial of discharge pursuant to Bankruptcy Code § 727(a)(5), for failure to explain a loss of assets. The plaintiff, on June 14, 2004, filed the present motion for summary judgment, together with its memorandum of law and Local Rule 56(a)1 Statement, on the remaining count of the complaint seeking denial of discharge pursuant to Bankruptcy Code § 727(a)(2)(A), alleging that "the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred ... property of the debtor, within one year before the date of the filing of the petition."[1] The court granted the debtor an extension of the time to respond, and the debtor, on July 29, 2004, timely filed his objection, together with his memorandum of law and Local Rule 56(a)2 statement. The plaintiff, on August 6, 2004, filed a reply brief.

### II.

### Background

The following statement of facts is not disputed. The debtor, an attorney, was incarcerated in a federal prison from January 31, 1994 to June 26, 1996, after pleading guilty to submitting a false financial statement with a loan application, and conspiracy to defraud the Internal Revenue Service. Since January, 2001, the debtor has been self-employed full time as a title searcher. From January 1, 2003 through June 25, 2003, the date the debtor filed his bankruptcy petition, the debtor grossed $105,640 in title-search fees. During the 12–month period prior to filing his petition, the debtor transferred compensation checks totaling $70,055 to his wife, Cynthia DiFabio ("Cynthia"), who deposited them in a checking account she maintained to pay household expenses. Cynthia used the account to pay the debtor's credit card bills. When the debtor ran short of cash or needed extra money, Cynthia withdrew cash from her checking account, either by using an ATM or by writing a personal check to herself, cashing the same and then giving the cash to the debtor. The debtor, during this period, also paid estimated quarterly federal and state income taxes for 2003 totaling $41,278. One day prior to filing his bankruptcy petition, the debtor opened an Individual Retirement Account ("the IRA") at a bank, with a deposit of $3,500.

---

1. 11 U.S.C. § 727(a) provides, in relevant part:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition ....

The debtor and Cynthia reside at 79 Pheasant Run, Avon, Connecticut, titled solely in Cynthia's name. The debtor uses an automobile owned by Cynthia, and he has not maintained a bank account from the time he was released from prison until the day before he filed his bankruptcy petition. Starting in February 2003, Cynthia stopped accepting any compensation checks from the debtor for deposit in her bank account. The debtor's bankruptcy schedules list debts totaling $5,189,164.74 and total assets of $34,445.00.

## III.

### *Arguments of the Parties*

■ The plaintiff argues that the circumstances surrounding the transfers (1) to Cynthia, (2) to open the IRA account and (3) to prepay income taxes, exhibit a number of "badges of fraud" from which a court may infer the debtor's intent to hinder, delay or defraud a creditor. "Badges of fraud" recognized in the Second Circuit include (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983); *Hirsch v. Steinberg (In re Colonial Realty Co.)*, 226 B.R. 513, 522 (Bankr.D.Conn. 1998).

The plaintiff notes that the debtor's transfer of a portion of his earnings to Cynthia was a transfer to a close family member; that the transfer was made without consideration; and that debtor retained the use and benefit of such funds so that Cynthia's bank account was the debtor's "own secret account."

The debtor avers that the funds were transferred to Cynthia to provide for the household expenses in accordance with his "common law and statutory duty" under Connecticut law to support his family. *See, e.g.* Conn. Gen.Stat. § 46b–37(b) (stating it is the joint duty of each spouse to support the family). The debtor also claims that Cynthia had always, since their marriage in 1971, managed the household expenses; that while he has not maintained a bank account for years, he was not required to do so; and that, although he did derive some benefit from the application of the transferred funds, he did not retain use or control of them, as only Cynthia was authorized to make payments or withdrawals from her account.

The plaintiff next argues that the debtor's "prepayment" of income taxes and his opening of an IRA are indicia of fraudulent intent since the debtor retained the benefit of the funds so transferred. The debtor avers that the $41,278 transfer was not a prepayment indicative of any intent to defraud creditors, but was the quarterly estimated state and federal income tax which he was required to pay because he is self-employed and does not have income taxes withheld from his earnings. While the debtor acknowledges opening an IRA on the eve of bankruptcy, thereby converting $3,500 that would otherwise have been included in the bankruptcy estate into exempt property, he cites the legislative history of Bankruptcy Code § 522 in support of his argument that such actions are not fraudulent as to creditors. *See, e.g.* H.R.Rep. No. 95–595 (1977), U.S.Code Cong. & Admin.News 1977, p. 5963 ("As under current law, the debtor will be per-

mitted to convert nonexempted property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors and permits the debtor to make full use of the exemptions to which he is entitled under the law." (citation omitted)).

## IV.

### *Discussion*

Fed.R.Civ.P. 56(c), made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

 The moving party has the burden of proving that no material facts are in dispute. *Hirsch v. Cahill (In re Colonial Realty Company)*, 210 B.R. 921, 923 (Bankr.D.Conn.1997) (citations omitted). Section 727(a)(2)(A) requires that actual intent to hinder, delay or defraud be established. "Constructive fraudulent intent cannot be the basis for denial of discharge, but fraudulent intent may be established by circumstantial evidence, or by inference drawn from a course of conduct. The statute is to be construed liberally in favor of debtors and strictly against the objector.... Because a debtor is unlikely to testify directly that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case." *In re Devers*, 759 F.2d 751, 753–754 (9th Cir.1985) (citing *In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976); other citations omitted).

 In considering a motion for summary judgment, the court does not decide questions of fact, but determines only whether, after resolving any ambiguities and drawing all reasonable inferences in favor of the nonmovant, a genuine issue exists for trial. *Hirsch v. Cahill*, 210 B.R. at 923. The plaintiff contends that the circumstances surrounding the transfers support an inference of fraudulent intent. The debtor argues his explanations for the transfers are plausible. On the basis of the evidence and arguments presented, the court concludes that whether the debtor's intent in making the transfers at issue was to hinder, delay or defraud his creditors presents a genuine issue of material fact best resolved at trial, where, in addition to weighing the evidence presented, the court will have an opportunity to evaluate the credibility of the witnesses. *See Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir.1991) (determination of fraudulent intent involves issues of credibility not suitable for summary judgment); *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984) (same).

## V.

### *Conclusion*

In accordance with the forgoing discussion, the court concludes that there are genuine issues of material fact to be determined at trial, and that the plaintiff's motion for summary judgment must be, and hereby is, denied. It is

SO ORDERED.