In re Henry S. ZEMBKO, III, Debtor.

Diana G. Adams, United States Trustee for Region 2, Plaintiff,

v.

Henry S. Zembko, III, Defendant.

Bankruptcy No. 01–23852.
Adversary No. 03–2036.

United States Bankruptcy Court, D. Connecticut.

May 1, 2007.

Steven E. Mackey, Office of the U.S. Trustee, New Haven, CT, for Plaintiff—United States Trustee.

John A. Barbieri, New Britain, CT, for Defendant—Debtor.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Henry S. Zembko, III ("the debtor"), then aged about 29 and represented by prior counsel, filed a "no asset" Chapter 7 bankruptcy petition on December 26, 2001. Following the debtor's examination by the Chapter 7 trustee at the § 341 meeting of creditors, the Chapter 7 trustee filed a

"report of no distribution." The court, on April 16, 2002, granted the debtor an uncontested discharge and, on May 8, 2002, closed the case. In early 2003, a creditor telephoned the office of the United States Trustee for Region 2 (the "UST") alleging that the debtor had concealed, from the Chapter 7 trustee and from creditors, his ownership or transfer of a firearms collection and a set of automobile mechanics tools. The court, on March 27, 2003, granted the UST's motion to reopen the debtor's bankruptcy case. The UST, on April 11, 2003, filed the present complaint seeking: (1) revocation of the debtor's discharge pursuant to Bankruptcy Code § 727(d)(1) (discharge obtained by fraud); and (2) and denial of a subsequent discharge pursuant to both § 727(a)(2)(A) (debtor's fraudulent transfer or concealment of property) and § 727(a)(4) (debtor's false oath).[1] The court held a trial on April 13, 2007, where only the debtor, formerly an automobile mechanic and now a realtor, testified, and the court received a number of exhibits into evidence.

## II.

### BACKGROUND

The debtor testified that, in May or June 2001, prior to filing his bankruptcy petition, he transferred his firearms collection, comprising eight weapons,[2] to his brother-in-law for no consideration. At the time, he conceded, he had considerable debt and little or no income. He stated that he made the transfer because he was involved in the breakup of a long-term romantic relationship and he feared for his safety and that of his ex-girlfriend with the weapons in the house they occupied.

In June or July 2002, shortly after the debtor's case was closed, the debtor stated that the brother-in-law returned all the weapons to the debtor because the brother-in-law "no longer wanted them." The debtor, after the commencement of the present adversary proceeding, sold the firearms collection for about $1,100 in cash, and retained the proceeds for his own use.

During the debtor's bankruptcy case, he twice denied, under oath, having made any prepetition transfers. Item 10 of the Statement of Financial Affairs ("SOFA") attached to his bankruptcy petition states, in relevant part:

> List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case.

The debtor responded by checking the box "None." (Exh. 1.) Subsequently, at the meeting of creditors, the Chapter 7 trustee, having sworn in the debtor, asked the debtor if he had: "Transferred anything of any value to anyone in the four years before you filed bankruptcy?" The debtor responded: "No." (Exh. 3.)

## III.

### APPLICABLE STANDARDS

Courts generally have recognized the importance of the discharge to the

---

1. The UST has withdrawn two additional counts contained in the complaint.

2. The debtor, in his response to the UST's interrogatories in the discovery phase of the present proceeding described and valued the firearms as follows:

| Make | Model | Caliber | Value |
|------|-------|---------|-------|
| Glock | 27 | 0.4 | $ 225 |
| Glock | 23 | 0.43 | 225 |
| Glock | 19 | 9mm | 225 |
| Par–Ordinance | P–10 | 0.45 | 225 |
| Ruger | P–90 | 0.45 | 150 |
| Smith & Wesson | SW9F | 9mm | 150 |
| UZI Eagle | 941RBL | 0.4 | 125 |
| Mossberg Shotgun | M500 | 12 Gauge | 100 |
| Total | | | $1,425 |

(Exh. 4 ¶ 1.)

debtor and, accordingly, have construed the provisions of § 727 liberally in favor of debtors. Because denial of discharge is an "extreme penalty," the provisions of § 727 are "construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir.1996) (citation and quotation marks omitted).

▮ The plaintiff has the burden of proof in an adversary proceeding objecting to discharge. Fed. R. Bankr.P. 4005.[3] The standard of proof is the preponderance of the evidence. *Wolfson v. Wolfson (In re Wolfson)*, 152 B.R. 830, 832 (S.D.N.Y.1993). "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden thereafter shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case. The plaintiff, however, always bears the ultimate burden of proving, by a preponderance of the evidence, the essential elements of an alleged objection to discharge." *PaineWebber, Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 440 (S.D.N.Y.1996).

### A.

### Elements of § 727(d)(1)

▮ For the debtor's discharge to be revoked pursuant to § 727(d)(1)[4], the UST must establish that (1) that the "discharge was obtained through the fraud of the debtor"; and (2) that the UST "did not know of such fraud until after the granting of such discharge." The debtor concedes that the UST has met her burden of proof as to the second element with the affidavit of Patricia Beary, Esq., Assistant U.S. Trustee for the District of Connecticut. (Exh. 6.)

▮ With regard to the first element, the UST must establish that the debtor committed actual fraud and that timely knowledge of such conduct would have provided grounds for denial of discharge. "The fraud required to be shown is fraud in fact, such as the intentional omission of assets from the debtor's schedules." 6 *Collier on Bankruptcy* ¶ 727.15 (15th ed. rev.2006); *Pelletier v. Donald (In re Donald)*, 240 B.R. 141, 146 (1st Cir. BAP 1999)(quoting *Collier*). The UST argues that the debtor's concealment of his auto mechanic's tools and his transfer and/or concealment of his firearms collection would have barred entry of a discharge pursuant to either § 727(a)(2) or § 727(a)(4).

### B.

### Elements of § 727(a)(2)

▮ "The exception to discharge in § 727(a)(2)(A) [or (B) ] essentially 'consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)'." *In re Kontrick*, 295 F.3d 724, 735–37 (7th Cir.2002) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir.1993)), *aff'd*, 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867

---

3. Fed. R. Bankr.P. 4005, "Burden of Proof in Objecting to Discharge," states: "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."

4. Section 727(d)(1) provides:
   (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—
   (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2004). The plaintiff must prove that (1) the debtor (2) postpetition or within one year prior to filing the bankruptcy petition (3) transferred or concealed (4) his property (5) with the intent to hinder, delay or defraud a creditor. *See, e.g. In re Kontrick*, 295 F.3d at 736. The intent required under § 727(a)(2) is the debtor's actual fraudulent intent. "Constructive fraudulent intent ... cannot be the basis for the denial of discharge." *In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976); *See also In re Devers*, 759 F.2d 751, 753–754 (9th Cir.1985); *The Cadle Co. v. DiFabio (In re DiFabio)*, 314 B.R. 281, 285 (Bankr. D.Conn.2004).

## III.

### *DISCUSSION*

▮ The disputed element of the UST's claims is whether the debtor acted with actual fraudulent intent. "Since the question of actual fraud involves the parties' states of mind, it is not ordinarily proven by direct evidence, but rather, by inference from other facts proven...." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir.1991) (citations and internal quotation marks omitted). Circumstances recognized by the Second Circuit as "badges of fraud" include: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry. *Hirsch v. Steinberg (In re Colonial Realty Co.)*, 226 B.R. 513, 522 (Bankr.D.Conn.1998) (citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983)).

▮ The UST, having presented sufficient evidence to establish her prima facie case under § 727(d)(1) and § 727(a)(2), the burden of production thus shifted to the debtor to rebut the inference of fraudulent intent. The court finds the debtor's testimony lacking in credibility and unsupported by any other evidence.[5] The debtor's firearms collection was one of his most valuable assets, exceeded in value only by his home and car. Had it not been transferred or concealed, the collection would have been the debtor's only non-exempt asset available for distribution to creditors. When the firearms were returned to the debtor he did not disclose their existence either to the Chapter 7 trustee or to his own attorney. Nor did he promptly inform his attorney when, while this proceeding was pending, he subsequently sold the firearms.

Whether the transfer even occurred is uncorroborated by any other evidence. Although the debtor contends that events precipitating the transfer were so traumatic that he feared for his personal safety, only a few months later, he claimed to have forgotten all about it. He denied having transferred any property until the UST, acting on information she received from a creditor after the closing of the case, filed her complaint and, during discovery, specifically questioned the debtor about his failure to schedule as an asset a collection of firearms he had allegedly owned. Only then did the debtor acknowl-

---

**5.** The debtor testified that his brother-in-law is in the Navy and is presently out of the country.

edge that he had owned the firearms, and explained that they were not scheduled in his petition because shortly before he filed bankruptcy, he had transferred them to his brother-in-law for reasons of safety.

The debtor testified that he had intended such transfer to be absolute and that he had no intention of getting the firearms back. However, the debtor never completed the documentation required under Connecticut law, Conn. Gen.Stat. § 29–33[6], upon transfer of a firearm. The debtor, despite owning eight firearms, claimed he was not aware of such legal requirements at the time of the transfer. However, when, during the pendency of the present adversary proceeding, the debtor sold the entire collection to another collector, he completed all the required statutory documentation.

On the basis of all of the evidence presented, the court concludes that the UST has satisfied her burden of proving, by the preponderance of the evidence, that the debtor, with actual intent to defraud creditors, either concealed his ownership of the firearms from the Chapter 7 trustee and/or transferred possession thereof to his brother-in-law within the year preceding his petition. In either event, the debtor is not entitled to a discharge pursuant to § 727(a)(2), and, having thus fraudulently obtained a discharge, the court concludes that such discharge be revoked pursuant to § 727(d)(1). Having so concluded, the court need not further consider whether the debtor should be denied a discharge for concealing his mechanic's tools or, under § 727(a)(4)(A), for his false oaths.

## IV.

### CONCLUSION

In accordance with the forgoing discussion, the court concludes that the discharge of the debtor be revoked and that the debtor be denied a subsequent discharge in this bankruptcy case. Judgement will so enter.

---

**6.** Conn. Gen.Stat. § 29–33 states, in relevant part:

(c) No person ... shall sell, deliver or otherwise transfer any pistol or revolver except upon written application on a form prescribed and furnished by the Commissioner of Public Safety. Such person, firm or corporation shall insure that all questions on the application are answered properly prior to releasing the pistol or revolver....

...

(c) Upon the sale, delivery or other transfer of any pistol or revolver, the person making the purchase or to whom the same is delivered or transferred shall sign a receipt for such pistol or revolver which shall contain the name and address of such person, the date of sale, the caliber, make, model and manufacturer's number and a general description of such pistol or revolver, the identification number of such person's permit to carry pistols or revolvers, issued pursuant to subsection (b) of section 29–28, permit to sell at retail pistols or revolvers, issued pursuant to subsection (a) of said section, or eligibility certificate for a pistol or revolver, issued pursuant to section 29–36f, if any, and the authorization number designated for the transfer by the Department of Public Safety. The person ... making delivery or transfer thereof shall give one copy of the receipt to the [transferee] ... shall retain one copy of the receipt for at least five years, and shall send within forty-eight hours of such ... transfer, one copy of the receipt to the Commissioner of Public Safety and one copy of the receipt to the chief of police ... of the town in which the transferee resides.