**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: ANN OTTOSON-KING,
                    *Debtor.*

---

ED POWERS; LUE POWERS,
          *Plaintiffs-Appellees,*

v.

ANN OTTOSON-KING,
          *Defendant-Appellant.*

No. 00-1706

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-00-251-A, BK-98-13983-SSM)

Argued: January 24, 2001

Decided: February 20, 2001

Before MOTZ and TRAXLER, Circuit Judges, and
Malcolm J. HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Joseph Francis Claffy, JOSEPH F. CLAFFY & ASSO-
CIATES, P.C., West Chester, Pennsylvania, for Appellant. John Ben-

jamin Raftery, DECKELBAUM, OGENS, REISER, SHEDLOCK & RAFTERY, CHARTERED, Bethesda, Maryland, for Appellees. **ON BRIEF:** Scott R. Sexauer, BECKER, HICKS, IRVING & HADEED, P.C., Springfield, Virginia, for Appellant. Darryl A. Feldman, DECKELBAUM, OGENS, REISER, SHEDLOCK & RAFTERY, CHARTERED, Bethesda, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Ann Ottoson-King petitioned for bankruptcy under Chapter 7. Ed and Lue Powers, creditors of Ottoson-King's, objected to her discharge. After a two-day trial, the bankruptcy court, ruling from the bench, denied Ottoson-King a discharge on the ground that, under 11 U.S.C. § 727(a)(5) (1994), she had failed to explain adequately the loss of assets that she had previously listed on financial statements. Ottoson-King appeals the district court's affirmance of that ruling. We, too, affirm.

I.

Ottoson-King, an attorney, practiced law for twelve years until 1992 when her firm dissolved. After that, Ottoson-King and a partner established a corporation known as American Coastal Ties Marines, Inc. (ACT Marines). In February 1995, ACT Marines purchased the assets of two companies owned by Mr. and Mrs. Powers. The purchase of the Powers' companies was financed by U.S. Bank in the State of Washington. Business assets and the personal guarantees of Ottoson-King and the Powers secured this bank loan. ACT Marines folded in 1997 and, in 1998, Ottoson-King petitioned for bankruptcy. After the dissolution of ACT Marines, the Powers were forced to repay the loan to U.S. Bank. They subsequently obtained a judgment against Ottoson-King in the amount of the bank loan, $1,116,937.70.

In connection with the acquisition of the loan from U.S. Bank, in February 1995, Ottoson-King submitted a financial statement to the bank that stated her net worth as $1,942,993. That statement showed $270,000 in savings, $260,000 in stocks and bonds, $1,195,000 in real estate, a $50,000 claim against her former law firm, and $750,000 of "appraised and certified antiques and jewelry." In May 1996, approximately one year later, Ottoson-King submitted a second financial statement to U.S. Bank showing a net worth of $2,030,225. This statement showed only nominal savings, but $250,000 in stocks, $1,245,000 in real estate, $50,000 in an IRA account and, again, $750,000 in antiques and jewelry.

On her bankruptcy schedules, filed in June 1998, Ottoson-King listed real estate of only $575,000, $50,000 in a joint bank account with her husband, $600,000 in a joint brokerage account with her husband, two IRA accounts totaling $50,000 and antiques and jewelry of an unknown amount. Although she never formally amended her bankruptcy schedules, when pressed by her Chapter 7 trustee at the meeting of creditors, Ottoson-King furnished an itemized listing of clothing, antiques and jewelry. That list included only $615 in heirlooms and $500 in jewelry.

At her deposition, Ottoson-King was asked about the difference between the $750,000 in antiques and jewelry shown on the 1996 financial statement and the approximately $1100 in antiques and jewelry listed on the bankruptcy schedule. Ottoson-King answered that she did not know and did not remember which items she believed, in 1995 and 1996, were worth $750,000. When asked if she had any jewelry or antiques worth $750,000, Ottoson-King replied that she must have believed that she did at the time she completed the financial statements, but that she did not know if she did, in fact, have any items worth that amount. She did acknowledge that she had not disposed of any antiques or jewelry listed in the financial statements since February 1995, nor had such items depreciated. When asked to account for the discrepancy between the earlier financial statements and the bankruptcy schedules, Ottoson-King answered that she did not know if anything had happened to the assets that would cause the discrepancy.

Another large, allegedly missing, asset is the $250,000 in stocks listed on Ottoson-King's 1996 U.S. Bank financial statement. These

stocks were not listed on Ottoson-King's bankruptcy schedule; rather, on the schedule, the only similar item Ottoson-King listed was a $600,000 brokerage account held as a tenancy by the entirety with her husband. At trial, Ottoson-King stated that the stocks listed on the 1996 financial statement *may* have been part of the $600,000 brokerage account listed on her bankruptcy schedule, but she was not certain. She attempted to explain her confusion by stating that her husband handled the finances in her family. The bankruptcy court found this explanation unsatisfactory because Ottoson-King was not an unsophisticated party, but rather a businesswoman with a law degree, an MBA, and many credits toward an MLA, and because there was no reason why she could not remember the events of only a few years ago.

Ottoson-King's husband also testified at the trial. In his testimony, he indicated that he did not believe that his wife possessed antiques or jewelry worth $750,000 in either May 1996, or at the time of bankruptcy. He stated that he owned some antiques but that he did not know their value. He had not disposed of any antiques between 1996 and 1998.

The bankruptcy court concluded that Ottoson-King "gave no satisfactory response" to the questions concerning the loss of assets previously listed on her financial statements. The court recognized that Ottoson-King had testified that, on the instruction of a U.S. Bank officer, she had included both her and her husband's assets in the 1996 financial statement, and that the bank officer's deposition testimony neither confirmed nor refuted Ottoson-King's assertion. The bankruptcy court found, however, that financial statement itself did not indicate whether particular assets were solely or jointly owned. For these reasons, the bankruptcy court refused to discharge Ottoson-King. The district court affirmed this ruling on the reasoning of the bankruptcy court.

## II.

In bankruptcy cases, we review the district court's judgment de novo, and the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *See In re Tudor Assosc., Ltd., II*, 20 F.3d 115, 119 (4th Cir. 1994). In reviewing the bankruptcy court's

findings of fact, we must give "due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

The Bankruptcy Code provides that a debtor should be denied a discharge if "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). This statute "gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983). "In a proceeding involving Section 727(a)(5), the initial burden is on the party objecting to a discharge to produce evidence establishing the basis for his objection whereupon the burden shifts to the debtor to explain satisfactorily the loss or deficiency of assets." *In re Farouki*, 133 B.R. 769, 777 (Bankr. E.D. Va. 1991), *aff'd* 14 F.3d 244, 251 (4th Cir. 1994); *In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984). The question of whether a debtor has satisfactorily explained a loss of assets is a question of fact. *Chalik*, 748 F.2d at 619. The debtor's explanation must be "reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went." *Farouki*, 133 B.R. at 777; *In re Hendren*, 51 B.R. 781, 788 (Bankr. E.D. Tenn. 1985). "The failure to offer documentary evidence to corroborate a debtor's testimony as to the loss or disposition of assets may justify the denial of a discharge pursuant to Section 727(a)(5)." *Farouki*, 133 B.R. at 777 (citing *Chalik*, 748 F.2d at 619).

Before us, Ottoson-King advances two principal reasons why we should reverse the district court and the bankruptcy court.

First, Ottoson-King contends that the Powers, as the objecting creditors, never proved the existence of the allegedly missing assets, as they are required to do. To that end, Ottoson-King notes that her bankruptcy schedule listed approximately $400,000 *more* in personal property than did her 1996 financial statement. According to Ottoson-King, this means that there were no missing assets. The argument fails.

Under § 727(a)(5), objecting creditors do not have to prove that the debtor acted knowingly or fraudulently in listing her assets or in with-

holding any information. *Compare* 11 U.S.C. § 727(a)(4) *with* 11 U.S.C. § 727(a)(5). Rather, all an objecting creditor need do is identify missing assets; once that is done, the debtor must explain in a satisfactory manner the loss of those assets. The 1996 U.S. Bank financial statement was sufficient to satisfy the objecting creditors' burden of identifying missing assets. *See In re Potter*, 88 B.R. 843, 849 (Bankr. N. D. Ill. 1988) (relying on financial statement to show existence of assets); *In re Savel*, 29 B.R. 854, 856 (Bankr. S.D. Fla. 1983) (same). Ottoson-King simply failed to carry her burden of explaining in a satisfactory manner the loss of these assets.

This is true even though Ottoson-King's bankruptcy schedules listed several hundred thousand dollars more in personal property than did the 1996 financial statement; while the personal property listed in the bankruptcy schedule had a higher *total* value, there was still a large discrepancy between the $750,000 in antiques and jewelry listed in the 1996 financial statement and the approximately $1100 of antiques and jewelry listed in the bankruptcy schedules. Moreover, the bankruptcy court was correct in its ruling that Ottoson-King had not adequately explained the disappearance of the $250,000 in stocks listed on her 1996 financial statement. Ottoson-King did not state with certainty whether the stocks she listed in the 1996 financial statement were part of the $600,000 brokerage account held with her husband. By failing to do so, she left open the possibility that in 1996 she individually held $250,000 worth of stocks that are not listed in her bankruptcy schedule. The Powers, therefore, met their burden of showing that assets that had previously existed no longer appeared to exist.

Alternatively, Ottoson-King argues that the assets listed on her 1996 financial statement were not available to pay her liabilities, as required by § 727(a)(5), because the statement included assets that belonged solely to her husband or were held as tenancies by the entirety.* Noting that Washington is a community property state,

---

*Ottoson-King also maintains that the financial statements showing her pre-petition assets were not disclosed to the Powers at the time they were completed, and thus the Powers' claim must fail because they did not rely on her financial statements in deciding to guarantee the bank loan. This argument is entirely without merit. There is no authority holding that a creditor must rely on a pre-petition financial statement in order to obtain relief under § 727(a)(5).

Ottoson-King maintains that a bank officer instructed her to include such jointly held assets on her financial statement, although her bankruptcy schedule, filed in Virginia, omitted these assets. The bankruptcy court, with good reason, found this explanation unsatisfactory.

As the Powers point out, during the same period in which Ottoson-King completed the 1996 financial statement for U.S. Bank, she sent a personal financial statement to Mr. Hagy, a businessman engaged by ACT Marines to assist the company in working out its financial and management difficulties. The values of the assets listed in this financial statement are virtually identical to those set forth in the 1996 U.S. Bank financial statement, and in the Hagy financial statement, Ottoson-King specifically stated that she was *not* relying on any community property or her spouse's income to show her creditworthiness. This casts doubt on Ottoson-King's claim that the allegedly missing assets that she listed in her 1996 U.S. Bank statement were her husband's heirlooms and jewelry, which she listed only because she was instructed to do so. Furthermore, although Ottoson-King makes much of the fact that Washington is a community property state, Ottoson-King herself was never a resident of Washington; rather King resides in Virginia, which is not a community property state, suggesting that she never possessed any community property. Ottoson-King was apparently aware of this distinction because, on the U.S. Bank financial statement, she did not complete the portion containing a series of questions for applicants who do live in community property states.

For all of these reasons, the judgment of the district court affirming the bankruptcy court's refusal to discharge Ottoson-King is

*AFFIRMED*.