In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2683

IN RE: ANDREW J. KONTRICK,

*Debtor-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 5736—**Harry D. Leinenweber**, *Judge.*

ARGUED JANUARY 10, 2002—DECIDED JULY 8, 2002

Before HARLINGTON WOOD, JR., RIPPLE and ROVNER,
*Circuit Judges.*

RIPPLE, *Circuit Judge.* Dr. Andrew Kontrick filed a Chapter
7 bankruptcy petition on April 4, 1997. Dr. Robert Ryan, a
judgment creditor, then filed an adversary proceeding
objecting to Dr. Kontrick's discharge. Ruling on summary
judgment, the bankruptcy court denied Dr. Kontrick dis-
charge under 11 U.S.C. § 727(a)(2)(A). The district court
affirmed the bankruptcy court's decision. Dr. Kontrick now
appeals and raises three objections to the bankruptcy court's
decision. First, he argues that Dr. Ryan's complaint was un-
timely. Second, he argues that the bankruptcy court incor-
rectly concluded that he had waived his objection to the
timeliness of Dr. Ryan's complaint and, further, that he
could not have waived such an objection because Federal
Rule of Bankruptcy Procedure 4004(a)'s time limit is jur-
isdictional and not subject to waiver. Finally, Dr. Kontrick

contends that the bankruptcy court improperly granted summary judgment because there is a genuine issue of material fact about his intent in transferring his paychecks to his wife in the year before bankruptcy. For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I

### A. Facts

Dr. Ryan and Dr. Kontrick, both cosmetic and plastic surgeons, were business associates. Each was a 50% shareholder in a professional corporation that Dr. Ryan had established. Dr. Kontrick had begun as an employee of the corporation and then, in 1989, he became part-owner. The association of the two physicians in this arrangement was a short and unhappy one. A variety of disputes, the details of which are not material to this appeal, arose. These disagreements were heard in two separate arbitrations. In the first, commenced in January 1992, Dr. Ryan was awarded $47,157.81 plus interest, expenses and attorneys' fees. Dr. Kontrick paid a total of $65,261.32 in satisfaction of this first arbitration. The second arbitration, commenced in October 1992, resulted in a 1995 award to Dr. Ryan of $519,324.42, including punitive damages, costs, expenses and attorneys' fees. The Circuit Court of Cook County entered a judgment on the award; the Illinois Appellate Court later reversed the punitive damages award and reduced the prejudgment interest rate. *See Ryan v. Kontrick*, 710 N.E.2d 11 (Ill. App. Ct. 1999).

During the first arbitration, Dr. Ryan filed a citation to discover Dr. Kontrick's assets. In an ensuing deposition, Dr. Kontrick was asked about his family finances, including his decision to remove his name from the family checking

account. Dr. Kontrick testified that personal expenses were paid from that account, now only in his wife's name, and admitted that "[i]t used to be my personal account. I don't have that account anymore." R.16-1, Ex.7 at 7-8; *see id.* at 10-11, 17-19. He continued: "What prompted this change was the ridiculous maneuvers that you and your client [Dr. Ryan] have put me through in order to collect money which you don't have coming to you." *Id.* at 9. Dr. Kontrick further elaborated, stating that "there are just thousands and thousands of thieves out there that are ready to come after you on any pretense and rob you of whatever belongings you might have. So I felt this was a way of protecting myself." *Id.* at 12. In Dr. Kontrick's view, this arrangement would protect him from people who were "more than willing to take your money on some pretense or some technicality that they push through some court and all kinds of wranglings. As you know, this is exactly what went on." *Id.* To protect himself from individuals, whom he identified as former patients who have suffered "some perceived wrong," Dr. Kontrick divested himself of his personal wealth, transferring much of it to his wife and daughter. *See id.* at 13-14. As part of this effort to insulate his assets from potential judgment creditors, Dr. Kontrick removed his name from the family checking account, leaving his wife as the sole signatory; he continued to deposit his paychecks into that account. *See id.* at 17-19. Summing up his approach to his finances, Dr. Kontrick testified that "I felt that to have any sort of assets that could possibly be taken away from me would be foolish. So I basically divested myself of everything." *Id.* at 29-30.

## B. Bankruptcy Court Proceedings

Dr. Kontrick filed for bankruptcy in April 1997. On January 13, 1998, Dr. Ryan, after having been granted three

extensions of time, filed his adversary complaint objecting to Dr. Kontrick's discharge. This adversary complaint included four counts (I-IV) objecting to discharge under 11 U.S.C. §§ 727(a)(2)-(5) and three counts (V-VII) seeking a determination of the nondischargeability of Dr. Kontrick's debts to Dr. Ryan under 11 U.S.C. §§ 523(a)(2), (4) & (6). Dr. Ryan filed an amended complaint on May 6, 1998, without a court-approved extension, which included for the first time the specific allegation that Dr. Kontrick had violated § 727(a)(2)(A) by taking his name off of a family checking account ("family account") and continuing to deposit his paychecks into the account.[1] Dr. Kontrick answered the amended complaint on June 10, 1998; in his answer, Dr. Kontrick admitted the transfers to the family account but denied violating § 727(a)(2)(A).

In March 1999, Dr. Ryan moved for summary judgment on all counts. Appended to his motion was a statement of facts pursuant to Local Bankruptcy Rule 402 ("402 M statement"). In August 1999, Dr. Kontrick filed a motion to strike portions of Dr. Ryan's 402 M statement. Dr. Kontrick maintained that "Ryan's 402 M statement contains an array of material that is not tied to anything alleged in the complaint." R.10-1, Ex.12 at 2. In this motion, Dr. Kontrick quoted Dr. Ryan's amended complaint for the purpose of comparing the allegations in the amended complaint with the facts claimed in the 402 M statement. Dr. Kontrick also filed a cross-motion for summary judgment.

The bankruptcy court granted Dr. Ryan's motion for summary judgment on Count I. The court also granted in part and denied in part Dr. Kontrick's motion to strike. The

---

[1] The original complaint included an objection to discharge based on § 727(a)(2)(A), but did not include a factual allegation with respect to the family account.

court found that, because Dr. Kontrick continued to place his paycheck into the family account, there was a transfer within one year of bankruptcy, as required by § 727(a)(2)(A). Further, the court reasoned that, although "[g]enerally, the question of intent will prevent the granting of summary judgment . . . here, the Debtor's intent is clear." Bankr. Op. at 14. "Kontrick, during the deposition pursuant to the citation to discover assets, freely admitted he transferred the bank account to Carolyn [his wife] to prevent his creditors from attaching the funds." *Id.* at 14-15. Therefore, the court concluded, Dr. Kontrick had made transfers within one year of bankruptcy with the "intent to hinder, delay, or defraud his creditors" within the meaning of § 727(a)(2)(A). The court denied discharge and then dismissed the remaining counts in Dr. Ryan's complaint.

Dr. Kontrick filed a motion to reconsider the bankruptcy court's decision. He argued that he had objected to the timeliness of Dr. Ryan's amended complaint and that the family account claim was improperly considered because it was untimely under Bankruptcy Rule 4004(a). In denying the motion to reconsider, the bankruptcy court held that Dr. Kontrick had waived an objection to the timeliness of the family account claim.

## C. District Court Proceedings

Dr. Kontrick appealed the bankruptcy court's decision to the United States District Court for the Northern District of Illinois. Dr. Kontrick submitted that the bankruptcy court had erred in finding that he had waived his Rule 4004(a) objection and that, even if he had failed to raise the objection, it could not be waived because Rule 4004(a) is jurisdictional and thus not subject to equitable doctrines such as waiver. Dr. Kontrick also contended that the bankruptcy

court erred in granting summary judgment because there was a genuine issue of material fact about his intent in transferring his paycheck to his wife's account in the year before bankruptcy.

The district court rejected all of Dr. Kontrick's arguments. First, the court concluded that Rule 4004(a) was not jurisdictional; it was more like a statute of limitations and could be waived. Second, the court determined, that, although Dr. Kontrick had mentioned that the amendment was late in his motion to strike, he did not raise the issue in his responsive pleading and thus had waived it. Finally, the court agreed with the bankruptcy court that Dr. Kontrick's deposition testimony from 1993 was conclusive on the issue of intent and affirmed the bankruptcy court's grant of summary judgment.

## II

### A.

We turn first to the timeliness of Dr. Ryan's objection to the discharge in bankruptcy. There is no dispute that Dr. Ryan's amended complaint, which included the family account allegation, was filed beyond the 60-day limit for filing objections and that there was no court-approved extension of time permitting him to file when he did.[2] The

---

[2] Neither the bankruptcy court nor the district court discussed whether the family account allegation properly related back to the timely complaint of January 13, 1998, such that the family account claim itself was timely. *See In re Magno,* 216 B.R. 34, 37-40 (BAP 9th Cir. 1997). Both courts assumed that the amended complaint and the family account allegation of May 6, 1998, were untimely. Dr. Ryan does not contest this assumption on appeal.

(continued...)

bankruptcy court and the district court concluded that Dr.
Kontrick had waived any objections to the timeliness of
Dr. Ryan's complaint. To determine whether the 60-day
time limit precludes consideration of Dr. Ryan's objection to
discharge, we must engage in a two-part inquiry. First,
we must decide whether the 60-day time limit for filing
objections to discharge under § 727(a), *see* Fed. R. Bankr.
P. 4004(a), is a jurisdictional prerequisite that cannot be
waived, or whether it is akin to a statute of limitations and
thus subject to waiver. If Rule 4004(a) is a jurisdictional re-
quirement, then Dr. Kontrick cannot have waived his ob-
jection. Second, if we determine that the time limit is not
jurisdictional, we must decide whether the bankruptcy court
correctly determined that Dr. Kontrick did indeed waive
objection.

**1.**

We first focus on whether the time limit for filing objec-
tions to discharge contained in Federal Rule of Bankruptcy
Procedure 4004(a) is a jurisdictional prerequisite and, there-
fore, cannot be waived. "Statutory filing deadlines are gen-
erally subject to the defenses of waiver, estoppel, and equit-
able tolling." *United States v. Locke*, 471 U.S. 84, 94 n.10
(1985). Our task is to determine whether Rule 4004(a) is an
exception to this principle. This question has divided the
bankruptcy courts that have had occasion to confront it.
*Compare In re Santos,* 112 B.R. 1001, 1008 (BAP 9th Cir. 1990)
(holding that Rules 4004(a) and 4007(c) are subject to waiv-

---

[2] (...continued)
Therefore, we shall proceed in the same fashion as the bank-
ruptcy and district courts and assume that the amended com-
plaint was untimely.

er); *In re Steiner*, 209 B.R. 281, 286 (Bankr. E.D.N.Y. 1996) (same); *In re Walker et al.*, 195 B.R. 187, 206-07 (Bankr. N.H. 1996) (same); *In re Begue*, 176 B.R. 801, 804 (Bankr. N.D. Ohio 1995) (same), *with In re Glover*, 212 B.R. 860, 861 (Bankr. S.D. Ohio 1997) (holding that time limits are jurisdictional and not subject to waiver); *In re Ham*, 174 B.R. 104, 106-07 (Bankr. S.D. Ill. 1994) (same); *In re Kirsch*, 65 B.R. 297, 299-303 (Bankr. N.D. Ill. 1986) (same). United States Courts of Appeals opinions, however, have produced unanimity. *See In re Benedict*, 90 F.3d 50, 54-55 (2d Cir. 1996) (holding that time limits are not jurisdictional and thus are subject to equitable defenses); *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 248 (4th Cir. 1994) (same).

We begin with the text of the provision in issue. Rule 4004(a) provides: "In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed no later than 60 days after the first date set for the meeting of creditors." Fed. R. Bankr. P. 4004(a). The analogous provision to Rule 4004(a) for objections to the dischargeability of a particular debt is Rule 4007(c) which provides: "A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c). Both of these rules contain provisions for the extension of the time limit. Rule 4004(b) permits the bankruptcy court to extend the time limit for cause, if the motion is filed before time expires. *See* Fed. R. Bankr. P. 4004(b). Rule 4007(c) has a similar provision for extending its time limit. *See* Fed. R. Bankr. P. 4007(c).[3]

---

[3] Because the rules are almost identical, it is appropriate to consider decisions by courts construing Rule 4007(c) as well as

(continued...)

As the opinions of the courts that have confronted this issue demonstrate, the texts of these bankruptcy rules yield no definitive answer to the question of whether the time limitations contained in these rules are jurisdictional in nature. The rules we have just described do not, as a matter of textual interpretation, address the issue. Although Rule 9006(3) restricts the grounds upon which the bankruptcy court may enlarge the time for actions required by Rules 4004(a) and 4007(c), these restrictions still vest a great deal of discretion in the bankruptcy court.

In the absence of a clear textual resolution of the issue, we must look elsewhere. In our view, the decision of the United States Bankruptcy Appeals Panel of the Ninth Circuit in *In re Santos*, 112 B.R. 1001, 1005 (BAP 9th Cir. 1990), presents a sound framework for analyzing whether the time limitations of Rules 4004(a) and 4007(c) are jurisdictional. As that court noted, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-97 (1982), teaches that, in order to determine whether the filing requirements are jurisdictional, we must examine "the structure, legislative history and underlying policy of the provision in question and the related statutory scheme." *In re Santos*, 112 B.R. at 1005.

**a.**

We turn first to an examination of the role that these rules play within the overall structure of the bankruptcy rules in the hope that such an inquiry might yield a more definitive understanding of whether the rules in question ought to be governed by the general principle that a filing deadline is

---

[3] (...continued)
Rule 4004(a). *See In re Santos*, 112 B.R. 1001, 1004 n.2 (BAP 9th Cir. 1990).

subject to equitable defenses or whether they are jurisdictional in nature.

In a thoughtful effort to apply this methodology, one bankruptcy decision, *In re Kirsch*, 65 B.R. 297, 301-02 (Bankr. N.D. Ill. 1986), reasoned that the situation presented by these bankruptcy rules is analogous to the one presented to this court in *Hulson v. Atchison, Topeka & Santa Fe Railway Co.*, 289 F.2d 726 (7th Cir. 1961). In *Hulson*, this court, applying the Federal Rules of Civil Procedure, held that the deadline for filing a motion for a new trial or a judgment notwithstanding the verdict under Rule 50(b) was jurisdictional and could not be extended pursuant to Rule 6(b). *See Hulson*, 289 F.2d at 729. The bankruptcy court in *Kirsch* analogized Rule 6(b) to Bankruptcy Rule 9006(b). *See In re Kirsch*, 65 B.R. at 301-02. It first noted that Rule 9006(b) was modeled on Rule 6 and serves a similar purpose in describing the proper functioning of time limits elsewhere in the rules and in limiting the power of courts to enlarge the time limits contained in certain rules. The court then noted that Rule 6(b), although generally permitting the district court to enlarge the time in which an act must be done under the rules, specifically excludes from this general approach, actions "under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and under 60(b), except to the extent and under the conditions stated in them." *See In re Kirsch*, 65 B.R. at 301 (quoting Fed. R. Civ. P. 6(b)). In *Hulson*, this court had said that the time limitations contained in Rules 50(b), and 59 (b), (d) and (e) prohibit the district court from acting on a motion not filed within the time specified in the rule. *See Hulson*, 289 F.2d at 729. Because Bankruptcy Rule 9006(b) contains the same limit with respect to Rule 4004(a), reasoned the court in *Kirsch*, the limitations in Rule 4004(a) also are not subject to judicial abrogation. *See In re Kirsch*, 65 B.R. at 302.

In light of the policy concerns that animate the bankruptcy rules at issue, we do not think that the analogy to the civil

rules relied upon by the court in *Kirsch* is very helpful in resolving the problem before us. Rule 50(b) and the other civil rules referenced in Rule 6(b) govern actions after a final judgment has been entered. Unless the time limits are strictly construed, a prevailing party will be left uncertain as to the status of his judgment. Substantial prejudice to a prevailing party could occur if the defeated party had an indefinite time period to seek a new trial. By contrast, Rules 4004(a) and 4007(c) apply before any adjudication has taken place and govern the timeliness of a complaint, which in turn invites a responsive pleading, an answer. A debtor can defeat an untimely complaint by raising Rule 4004(a) or Rule 4007(c) as an affirmative defense in his answer. Although there is an important interest in limiting the time in which the dischargeability of debts can be challenged in order to ensure that debtors are not "harassed by creditors after their claims have been discharged in bankruptcy," *Kirsch*, 65 B.R. at 300, we do not think that it is at all evident that Congress intended to limit the authority of the bankruptcy court so rigidly as to preclude all relief from the time constraints of the rule. Notably, Rules 4004(b) and 4007(c) explicitly permit the bankruptcy court to enlarge the time for filing a complaint objecting to discharge. As the court pointed out in *In re Santos*, 112 B.R. at 1006, if Rule 4004(a) is jurisdictional, then even a final judgment would be subject to collateral attack, a result that would hardly serve the Bankruptcy Code's goal of promoting certainty and finality for debtors. Were we to hold that these rules were jurisdictional, bankruptcy judgments would be subject to collateral attack after the bankruptcy court has completed its work and after the parties have complied with the court's mandate. *See In re Santos*, 112 B.R. at 1006. This situation would be "clearly at odds with the purpose of promoting finality and certainty of relief." *Id.*

Even when the underlying policy concerns of the Bank-ruptcy Code are reviewed without reference to the analogy to the civil rules suggested in *Kirsch*, characterization of these bankruptcy rules as jurisdictional would yield too rigid a result to achieve the goals of the bankruptcy statute. As the bankruptcy panel pointed out in *Santos*, there are, to be sure, some goals of bankruptcy relief that are promoted by expeditious and definitive resolution of the question of dischargeability. Indeed, among the goals of the rules in question is furtherance of the prompt administration of bankruptcy estates and protection of the "fresh start" ob-jective of the Code by allowing the debtor to enjoy finality and certainty of relief. *See In re Santos*, 112 B.R. at 1006. However, as the panel in *Santos* also pointedly noted, these goals are best fostered, not by a rigid jurisdictional ap-proach, but by the exercise of equitable discretion in a man-ner consistent with the policies that animate the Bankruptcy Code. *See id.* Indeed, as another Ninth Circuit bankruptcy panel intimated, requiring that an enlargement of time be sought during the period in which the complaint should have been filed, but nevertheless giving at least that limited opportunity evidences that Congress, although desirous of finality, realized that a rigid rule also could be inequitable at times and frustrate the goals of the Code. *See In Re Rhodes*, 61 B.R. 626, 629-30 (BAP 9th Cir. 1986).

### b.

As the bankruptcy panel in *Santos* also noted, the overall statutory structure of the bankruptcy statute also provides support for the view that the rules are not jurisdictional. *See In re Santos*, 112 B.R. at 1005. The statutes granting juris-diction to the bankruptcy and district courts over bank-ruptcy matters do not indicate that timeliness of objec-tions to discharge is a jurisdictional predicate. *See* 28 U.S.C.

§§ 157(b)(1), 1334. An "objection[ ] to discharge" is a "core proceeding[ ]" over which the bankruptcy court exercises jurisdiction. 28 U.S.C. § 157(b)(2)(J). Nowhere in the definition of core proceedings is the adjective "timely" used to define a core proceeding. Thus, there is nothing within § 157(b) to indicate that a bankruptcy court is precluded from considering untimely objections to discharge.

Matters of timeliness are, notably, present in other provisions. For instance, section 157(b)(3) states that "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding." 28 U.S.C. § 157(b)(3). Further, for a party to obtain de novo review in the district court of a bankruptcy court's findings of fact and conclusions of law in a non-core proceeding, that party must "timely and specifically object[ ]." 28 U.S.C. § 157(c)(1). These references to timeliness in sections other than the grants of jurisdiction support the view that timeliness is not a prerequisite to the bankruptcy court's exercise of jurisdiction in a core proceeding such as Dr. Ryan's objection to discharge.

### c.

We find the legislative history of the rules in question to be of marginal assistance in our task. The notes of the Advisory Committee with respect to Rule 4007 state in part:

> Subdivision (c) differs from subdivision (b) by imposing a deadline for filing complaints to determine the issue of dischargeability of debts set out in § 523(a)(2), (4) or (6) of the Code. The bankruptcy court has exclusive jurisdiction to determine dischargeability of these debts. If a complaint is not timely filed, the debt is discharged. *See* § 523(c).

One plausible reading of this passage is, as the court in *Santos* acknowledged, that the bankruptcy court can only act on a dischargeability complaint if it is filed in a timely manner. *See Santos*, 112 B.R. at 1005. However, the notes to the 1999 amendments explicitly reiterate the right of a party to seek an enlargement of time, thus acknowledging that some flexibility was intended by the drafters. In any event, we agree with the panel in *Santos* that this passage in the Committee note is hardly conclusive or even persuasive in light of the structure and policy of the Code and the bankruptcy rules.

### d.

Accordingly, we join our colleagues in the Second and Fourth Circuits in holding that the timeliness provisions at issue here are not jurisdictional. *See In re Benedict*, 90 F.3d 50, 53-54 (2d Cir. 1996); *Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244, 248 (4th Cir. 1994). These rule provisions are subject to equitable defenses, although those defenses must be applied in a manner consistent with the manifest goals of Congress to resolve the matter of dischargeability promptly and definitively in order to ensure that the debtor receives a fresh start unobstructed by lingering doubts about the finality of the bankruptcy decree.[4]

---

[4] Contrary to Dr. Kontrick's assertion, we do not think that the Supreme Court's decision in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), requires a different result. *But see In re Leet*, 274 B.R. 695, 696-97 (BAP 6th Cir. 2002). In *Taylor*, the Court held that there was no good-faith exception to the time limits for filing objections to a debtor's list of exempt property. *See Taylor*, 503 U.S. at 644-45. Under 11 U.S.C. § 522(b), a debtor may claim certain property as exempt from his bankruptcy estate; the debtor

(continued...)

---

[4] (...continued)
may elect to use exemptions under state or federal law. *See* 11 U.S.C. § 522(b)(1)-(2). Section 522(l) describes the procedures for claiming such exemptions: "The debtor shall file a list of property the debtor claims as exempt. . . . Unless a party in interest objects, the property claimed on such list is exempt." *Id.* § 522(l). Bankruptcy Rule 4003(b) provides that "[t]he trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors." Fed. R. Bankr. P. 4003(b).

In *Taylor*, the debtor had claimed as exempt the proceeds from an employment discrimination lawsuit that was pending in state court at the time of her bankruptcy filing. *See Taylor*, 503 U.S. at 640. The parties agreed that there was no basis for her to claim an exemption for the full amount of the proceeds. *See id.* at 642. Nevertheless, the trustee declined to object to the exemption because he believed that the lawsuit was meritless. *See id.* at 641. He was incorrect, and the debtor eventually settled for about $110,000, a portion of which the debtor paid to her attorneys in the discrimination suit. *See id.* Upon learning of the settlement, the trustee returned to the bankruptcy court almost two years after the bankruptcy proceedings ended and demanded that the debtor and her attorneys turn over the funds on the ground that they were the property of the bankruptcy estate. *See id.* The trustee argued that the time limits in Rule 4003(b) only applied to exemptions filed in good faith and because the debtor had no good-faith basis for claiming the exemption, the trustee was able to file his objection outside of the time limit. *See id.*

The Supreme Court rejected this argument. *See Taylor*, 503 U.S. at 642. The Court held that the deadline in Rule 4003(b) should be construed strictly: "By negative implication, the Rule indicates that creditors may not object after 30 days 'unless, within such period, further time is granted by the court.' " *Id.* at 643. Since no objection was filed within 30 days, the property was exempt by

(continued...)

**2.**

Having determined that an objection to the timeliness of a complaint under Rule 4004(a) is subject to waiver, we must now decide whether Dr. Kontrick did waive his objection. In making that determination, we must keep in mind the Congressional policy of resolving the matter of dischargeability promptly and of permitting the debtor to

---

[4] (...continued)
the operation of 11 U.S.C. § 522(l). *See id.* The Court noted that "despite what respondents repeatedly told him, [the trustee] did not object to the claimed exemption. If [the trustee] did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, see Rule 4003(c), or he could have asked the Bankruptcy Court for an extension of time to object." *Id.* at 644. Thus, the Court concluded that objections filed outside the time limit were untimely and should not have been considered by the bankruptcy court. *Id.* The Court further concluded that there was no statutory basis for reading a good-faith exception into § 522(l). *See id.* at 644-45. The Court did not hold, however, that the debtor had an unlimited time in which to object to the trustee's untimely objection or that Rule 4003(b) was not subject to the usual equitable doctrines that apply to other deadlines and statutes of limitations.

While the Court in *Taylor* did stress the importance of deadlines, *see Taylor*, 503 U.S. at 644, we believe this emphasis supports our conclusion, rather than undermines it. As the Court noted, "[d]eadlines may lead to unwelcome results, but they prompt parties to act and promote finality." *Id.* This analysis applies with equal force to the doctrine of waiver, which requires parties to put all of their arguments before the appropriate court at the appropriate time for a full resolution of their claims. Here, parties are prompted to action and finality is served by our conclusion that parties may waive any objection to the untimeliness of a creditor's complaint if the objection is not raised at the proper time.

begin his fresh start without lingering doubts about the finality of the bankruptcy court's actions.

As a general matter, a statute of limitations defense must be raised in an answer or responsive pleading. *See* Fed. R. Civ. P. 8(c); *see also Jackson v. Rockford Housing Auth.*, 213 F.3d 389, 392-93 (7th Cir. 2000). Federal Rule of Civil Procedure 8 is incorporated into the Bankruptcy Rules. *See* Fed. R. Bankr. P. 7008. Dr. Kontrick filed his voluntary petition for relief under Chapter 7 on April 4, 1997. On January 13, 1998, Dr. Ryan filed his original adversary complaint. Later, on May 6, 1998, Dr. Ryan filed an amended complaint. Dr. Kontrick answered the amended complaint on June 10, 1998, without raising his Rule 4004(a) untimeliness defense.

Dr. Kontrick argues that he raised the issue in his motion to strike portions of Dr. Ryan's motion for summary judgment. Dr. Kontrick's motion to strike was filed on August 2, 1999. Even assuming, arguendo, that Dr. Kontrick's motion to strike was an acceptable vehicle for raising a Rule 4004(a) objection, we must conclude that Dr. Kontrick waived his objection to the timeliness of Dr. Ryan's complaint.

Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Sumner*, 265 F.3d 532, 537 (7th Cir. 2001). A waiver may be explicit or implicit. A party may waive an argument if it is not raised at the proper time. *See Carr v. O'Leary*, 167 F.3d 1124, 1126 (7th Cir. 1999). Generally, statute of limitations defenses must be raised in an answer or responsive pleading. *See* Fed. R. Civ. P. 8(c). With these principles in mind, we turn to an examination of Dr. Kontrick's motion to strike portions of the motion for summary judgment. In that motion, Dr. Kontrick submitted that "Ryan's Rule 402 M statement contains an array of material that is not tied to anything alleged in his complaint." R.10-1, Ex.12 at 2. To support this argument, Dr.

Kontrick then listed the allegations made in Dr. Ryan's amended complaint in order to compare them with factual statements in Dr. Ryan's 402 M statement. In short, he used the allegations of the amended complaint as a "baseline" to establish that the Rule 402 M statement went beyond the bounds of that complaint. Included within the excerpts from Dr. Ryan's amended complaint are his factual allegations under Count I, the objection to discharge under § 727(a)(2)(A). From paragraph 56 of Dr. Ryan's amended complaint, Dr. Kontrick recites: "Removing name from family bank account." *Id.* at 4. At the conclusion of this summary of Dr. Ryan's allegations, Dr. Kontrick states: "This is the extent of the allegations in the complaint. Ryan has not even attempted to amend his complaint to add additional allegations." *Id.* at 5.

What is clear from Dr. Kontrick's motion to strike is that he is relying on Dr. Ryan's amended complaint, including the family account claim, to object to additional allegations made in Dr. Ryan's 402 M statement. Nowhere does Dr. Kontrick contest the timeliness of the allegations in the amended complaint. This failure is sufficient to constitute waiver of Dr. Kontrick's objection to the timeliness of the complaint. Indeed, Dr. Kontrick did not raise the timeliness issue until after the bankruptcy court entered summary judgment for Dr. Ryan.

Under these circumstances, we must conclude that Dr. Kontrick waived the argument that Dr. Ryan's allegation that discharge ought to be denied because of Dr. Kontrick's handling of his checking account was untimely. This conclusion is compatible with the general principles that govern the application of the waiver defense and is also compatible with the policies underlying the Bankruptcy Code. Here, the timeliness issue was not presented to the bankruptcy court until after it had ruled on the question of whether a dis-

charge ought to be refused. The policy concerns of expeditious administration of bankruptcy matters and the finality of the bankruptcy court's decision hardly are fostered by requiring the bankruptcy court to consider the timeliness of an issue that it already has adjudicated.

### B.

We must now determine whether the bankruptcy court properly granted summary judgment to Dr. Ryan and denied Dr. Kontrick his discharge. We review a grant of summary judgment de novo. *See In re Lefkas Gen'l Partners*, 112 F.3d 896, 899-900 (7th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party resisting summary judgment cannot succeed simply by resting on his pleadings, he must come forth with positive evidence in support of his position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There is no "genuine" issue of material fact "for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "When the moving party has carried its burden under Rule 56(c), its opponents must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmovant.

The bankruptcy court granted summary judgment on Count I of Dr. Ryan's complaint, which alleged that dis-

charge should be denied because Dr. Kontrick had violated 11 U.S.C. § 727(a)(2)(A). Section 727(a)(2)(A) provides, in relevant part, that "[t]he court shall grant the debtor a discharge unless . . . the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). To prevail, Dr. Ryan must prove that (1) the debtor, Dr. Kontrick, (2) transferred (3) the debtor's property, (4) with the intent to hinder, delay, or defraud a creditor (5) within one year of bankruptcy. *See id.* The exception to discharge in § 727(a)(2)(A) essentially "consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d. Cir. 1993). "The party seeking to bar discharge must prove that *both* these components were present during the one year before bankruptcy; anything occurring before that one year period is forgiven." *Id.* (emphasis in original). In bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). Even with these principles in mind, we believe that Dr. Ryan has satisfied the statute's prerequisites sufficiently to support the bankruptcy court's grant of summary judgment.

Dr. Kontrick does not dispute that he continued to deposit his paycheck into the family account in the year before bankruptcy. Instead, he argues that there is a question of fact about his intent and that there was no act to hinder, delay or defraud creditors within one year. *See* Appellee's Br. at 13. Dr. Kontrick cites *In re Ratner*, 132 B.R. 728, 733 (N.D. Ill. 1991), for the proposition that a debtor has no obligation to maintain a checking account for the benefit of his creditors. This proposition is true as far as it goes, but § 727(a)(2)(A) makes it clear that a debtor may not divest

himself of property with the intent to hinder, delay or defraud his creditors and still receive a discharge. In *Ratner*, the court determined that the bankruptcy court had not committed error in concluding that the circumstances surrounding the use of a spouse's checking account did not supply sufficient circumstantial evidence to permit the conclusion that the debtor had attempted to evade payment to his creditors. Here, however, we have direct evidence of Dr. Kontrick's intent.

In his 1993 deposition pursuant to Dr. Ryan's citation to discover assets, Dr. Kontrick admitted that he took his name off the checking account, stating that "[i]t used to be my personal account. I don't have that account anymore." R.16-1, Ex.7 at 7-8. Moreover, he said that he took this action because of "the ridiculous maneuvers that you and your client [Dr. Ryan] have put me through in order to collect money which you don't have coming to you." *Id.* at 9. Dr. Kontrick wanted to protect himself from the "thousands and thousands of thieves out there that are ready to come after you on any pretense and rob you of whatever belongings you might have." *Id.* at 12. Dr. Kontrick freely admitted that his divestitures were designed to diminish the amount of money creditors would be able to obtain from a judgment against him, including Dr. Ryan with whom Dr. Kontrick was engaged in a nasty business dispute at the time. "I felt that to have any sort of assets that could possibly be taken away from me would be foolish. So I basically divested myself of everything." *Id.* at 29-30.

Intent is normally a question of fact and often not susceptible to summary judgment. Here, however, we have direct and unrebutted evidence, from Dr. Kontrick's own words, of his intent. Dr. Kontrick cannot defeat summary judgment simply by raising a "metaphysical doubt" about his intent. *See Matsushita*, 475 U.S. at 586. Dr. Kontrick has not put forth any evidence suggesting that his intent with respect to the

family account changed between his 1993 deposition and his depositing his paycheck into the family account in the year before he filed for bankruptcy. There is also nothing in his circumstances to suggest that his intent was any different in 1997 than it had been in 1993. Dr. Kontrick's bitter dispute with Dr. Ryan was ongoing, with Dr. Kontrick owing to Dr. Ryan a judgment at one point valued at more than $600,000. The record contains no basis for the conclusion that, although Dr. Kontrick removed his name from the family account in late 1992 or early 1993 to thwart his creditors, his deposits in 1996 and 1997 were for a purpose permitted by the Code.

The bankruptcy court was entitled to conclude that those deposits were "transfers" of Dr. Kontrick's property, with the "intent to hinder, delay, or defraud a creditor" within one year of filing for bankruptcy. 11 U.S.C. § 727(a)(2)(A). By depositing his paycheck into an account over which he had no control, Dr. Kontrick put those assets beyond the reach of his creditors, just as he had done with the property that he transferred to his wife and daughter before 1993.

In support of his contention that summary judgment was inappropriate here, Dr. Kontrick invites our attention to *Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993). In *Rosen*, the debtor transferred his interest in his principal residence to his wife on December 28, 1987 for no consideration. *See Rosen*, 996 F.2d at 1529. Almost two years later, on September 12, 1989, the debtor filed a chapter 7 bankruptcy petition. *See id.* at 1530. The trustee objected, arguing that the debtor had transferred his property with the actual intent to hinder, delay or defraud a creditor. *See id.* The bankruptcy court granted summary judgment to the trustee and the district court affirmed. *See id.* The Third Circuit reversed, and remanded the case to the bankruptcy court for a factual determination of the debtor's intent. *See id.* at 1533. Unlike this case, *Rosen* involved the application of the "continuing

concealment" doctrine under which "a concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year." *Id.* at 1531. That doctrine is inapplicable when, as here, the transfers took place within one year of bankruptcy. Finally, unlike the court in *Rosen*, we have unrefuted evidence of Dr. Kontrick's intent in first arranging his finances as he did and no evidence to suggest that his intent has changed.

There is no genuine issue of material fact regarding the applicability section 727(a)(2)(A)'s exception to discharge. Dr. Kontrick violated section 727(a)(2)(A) by depositing his paycheck into the family account, over which he had no control. Dr. Ryan is entitled to judgment as a matter of law on Count I of his amended complaint.

## Conclusion

Dr. Kontrick waived his objection to the timeliness of Dr. Ryan's amended complaint. The bankruptcy court properly granted summary judgment to Dr. Ryan and denied Dr. Kontrick's discharge under 11 U.S.C. § 727(a)(2)(A). The judgment of the district court sustaining that decision is therefore affirmed.

AFFIRMED

A true Copy:

     Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*