In re Michael T. RYAN and Ann F. Ryan, a/k/a Ann F. Hanlon, individually and d/b/a Trek International and Martracent, Debtors.

Carol Heinecke, Virginia C. Crawford, Robert Pfaff, Sheldon Soble, and Jeff Madia, Plaintiffs,

v.

Michael T. Ryan and Ann F. Ryan, a/k/a Ann F. Hanlon, individually and d/b/a Trek International and Martracent, Defendants.

Bankruptcy No. 01–24274–BM.
Adversary No. 01–2414–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 25, 2002.

Mark A. Grace, Esq., Pittsburgh, PA, for Plaintiffs.

Daniel J. Garfold, Esq., Pittsburgh, PA, for Debtors/Defendants.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiffs in this adversary action seek to deprive debtors of a bankruptcy discharge, which in this venue is our death sentence. They assert that: debtors transferred or concealed certain of their assets during the one-year period prior to the filing of their

bankruptcy petition (§ 727(a)(2)(A)); debtors failed to keep recorded information from which their financial condition or business activities might be reconstructed (§ 727(a)(3)); and debtors failed to satisfactorily explain a loss or deficiency of assets to meet their liabilities (§ 727(a)(5)).

Debtors deny that any of these exceptions to granting them a discharge apply to their case.

We find for reasons set forth below that none of these exceptions to granting debtors a discharge applies and that plaintiffs have asserted no basis for denying plaintiffs a discharge.

## – FACTS –

The facts of this case are sketchy and disjointed.

Debtors, who are husband and wife, began doing business as Trek International ("Trek") early in 1994. Trek sold travel memberships at a discount for various hotels. It also booked reservations for car rentals and distributed discount coupons for one or more theme parks. Debtor Michael Ryan operated the business on a day-to-day basis while debtor Ann Ryan prepared and maintained their books and records.

Debtors also did business as a travel-related entity known as Martracent. The record does not indicate the precise nature of Martracent's business.

Debtors borrowed money from Plaintiff Virginia Crawford on at least three occasions prior to July 18, 1995. The total amount owed on these loans, including interest, was $48,070.38 as of June 30, 1995.

Debtors entered into an agreement with Virginia Crawford on July 18, 1995, whereby she loaned debtors an additional $36,000.00. Agreements modifying the various payment terms of these loans were executed on February 24, 1998.

At some time late in 1998 or early in 1999, plaintiff Robert Pfaff invested or loaned $60,000.00 to debtors so that Trek could purchase 2,000 certificates entitling the holder to a cruise and hotel stay in the Bahamas. Thereafter, they were to be sold to individuals and organizations at a profit.

At or about the same time, plaintiff Sheldon Sobel invested or loaned another $40,000.00 to Trek for the purchase of an additional 1,000 of these certificates from Air, Land & Sea.

Debtors received a total of $100,00.00 from Pfaff and Sobel to purchase 3,000 certificates, for which debtors paid Air, Land & Sea $30.000.00

Air, Land & Sea did not release all of the certificates at once but instead released them on an as-needed basis. Trek sold only one certificate to a third party. Neither plaintiff sold any certificates. Virtually all of the certificates were retained by Air, Land & Sea, which ceased doing business at some undisclosed time after January of 1999.

Plaintiff Jeff Madia loaned debtors $25,000.00 at some undisclosed time. The purpose of the loan is not apparent from the record.

Plaintiffs were not the only ones to lend money to debtors. John Ryan, father of debtor Michael Ryan, and Tony Cinciripini, uncle of debtor Michael Ryan, also loaned money to debtors. Debtors owed $180,000.00 to John Ryan and $100,00.00 to Tony Cinciripini at the time debtors filed their bankruptcy petition.

Debtors filed a voluntary chapter 7 petition on April 23, 2001. The assets listed on their schedules consisted of their heavily mortgaged personal residence with a declared value of $134,000.00 and personalty with a declared value of only $4,440.00.

Liabilities totaling $667,222.00 were also listed. Of this amount, $557,940.00 was general unsecured debt. Creditors having general unsecured claims included: John Ryan ($180,000.00); Tony Cinciripini ($100,000.00); John and Carol Heinecke (amount unknown); Virginia Crawford ($70,000.00); Robert Pfaff ($60,000.00); Sheldon Sobel ($40,000.00); Lou Menago ($25,000.00); and Jeff Madia ($25,000.00).

The chapter 7 trustee has reported that this is a no-asset case and that nothing is available from estate assets for distribution to creditors.

Plaintiffs brought this adversary action seeking to deny debtors a discharge in accordance with §§ 727(a)(2)(A), 727(a)(3), and 727(a)(5) of the Bankruptcy Code. The matter was tried on October 27, 2002.

## – DISCUSSION –

With certain specified exceptions, section 727(a) of the Bankruptcy Code mandates that a chapter 7 debtor who is an individual shall receive a discharge. It provides in relevant part as follows:

(a) The court shall grant the debtor a discharge, unless—....

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, ... [or] concealed ...—

(A) property of the debtor, within one year before the date of the filing of the petition; or ...

(3) the debtor has concealed, destroyed, ... or failed to keep or preserve any recorded information ... from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; [and]...

(5) the debtor has failed to explain satisfactorily .... any loss of assets or deficiency of assets to meet the debtor's liabilities....

11 U.S.C. § 727(a).

■ Section 727(a) must be construed liberally in favor of the debtor and against a creditor objecting to the debtor's discharge. Applying one of the exceptions to discharge is an extreme measure which should not be undertaken lightly. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993). As previously stated, a denial generally of a bankruptcy discharge is the most substantial sanction meted out in this court.

■ A creditor objecting to a debtor's discharge bears the initial burden of proving that the case falls within one of the exceptions. They must prove facts essential to that particular exception. *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir.1992).

### § 727(a)(2)(A).

■ The exception to discharge found at § 727(a)(2)(A) is comprised of two basic components: an act (e.g., a transfer or a concealment of debtor's property); and an improper motive (i.e., a subjective intent to hinder, delay, or defraud a creditor). *Rosen*, 996 F.2d at 1531. The objecting party must establish that *both* of these components were present during the one year period before bankruptcy; anything occurring before that one year period "is forgiven". *Id.*

■ To prevail under § 727(a)(2)(A), one must prove that: (1) the debtor; (2) transferred or concealed; (3) debtor's property; (4) with intent to hinder, delay, or defraud a creditor; (5) within one year prior to the bankruptcy filing. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir.2002).

■ The required intent must be actual; constructive fraud will not suffice. *Groman v. Watman (In re Watman),* 301 F.3d 3, 8 (1st Cir.2002). Because actual intent is difficult to prove by direct means, it may be inferred from circumstantial evidence. *In re Snyder,* 152 F.3d 596, 601 (7th Cir.1998).

■ A debtor may be denied a discharge pursuant to § 727(a)(2)(A) even though no creditor was harmed by the transfer or concealment. Proof of harm, in other words, is not a requirement of § 727(a)(2)(A). *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 684 (6th Cir.2000).

■ The thrust of plaintiffs' assertion that the exception to discharge found at § 727(a)(2)(A) applies to this case is not obvious. Plaintiffs apparently contend that debtors should be denied a discharge because, within one year of the filing of their chapter 7 petition, debtors transferred or concealed the above-described funds they received from plaintiffs and from others with actual intent to hinder, delay, or defraud their creditors.

This assertion lacks merit for a variety of reasons.

To begin with, plaintiffs have not identified any specific transfers or concealments of their property that took place during the one-year period prior to April 23, 2001. We are at a loss to know which particular acts or transfers they would have us consider.

More importantly, plaintiffs have not demonstrated that any transfers or concealments by debtors of their property during this one-year period were made with actual intent to hinder, delay, or defraud them or other creditors.

Debtors' assets unquestionably were significantly diminished within a year prior to their bankruptcy filing. They have conceded as much in averring that substantial funds were used to keep the doors open. Without something more, however, such loss is not sufficient to establish that debtors acted in this regard with actual intent to defraud their creditors. Plaintiffs have not, in our estimation, established that "something more".

### § 727(a)(3).

■ Section 727(a)(3) of the Bankruptcy Code makes financial disclosure a *sine qua non* for receiving a discharge in bankruptcy. *Meridian Bank,* 958 F.2d at 1230. This provision ensures that creditors receive complete and accurate information about a debtor's financial affairs and tests the completeness of the disclosure required for a discharge. *Id.,* 958 F.2d at 1234. It is intended to provide creditors with dependable information upon which they can rely. *Id.,* 958 F.2d at 1230.

■ A debtor is not required to keep and maintain complete and impeccable books and records as a precondition to obtaining a discharge. These books and records must, however, identify debtor's financial transactions with sufficient clarity to make intelligent inquiry possible. *Id.* The test is whether "there [is] available written evidence from ... which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained". *Id.* (quoting *In re Decker,* 595 F.2d 185, 187 (3d Cir.1979)).

■ If a debtor fails to keep and maintain adequate records, some justification is required. *Id.* What constitutes justification depends on the totality of the circumstances and on what a reasonable person would do under similar circumstances. *Id.*

■ Adequacy for purposes of § 727(a)(3) may differ from one debtor

to the next. Different record-keeping practices may be adequate in different contexts, depending on the debtor's sophistication and the extent of the debtor's financial activities. The more sophisticated and complex a debtor's business practices are, the higher is the standard for keeping records to which they are held. *Id.*

A creditor objecting to a debtor's discharge bears the initial burden of proving that the case falls within one of the exceptions to discharge found at § 727(a). The creditor must prove facts essential to that exception to discharge. *Meridian Bank,* 958 F.2d at 1232.

■ To state a prima facie case for purposes of § 727(a)(3), the objecting creditor must show that: (1) the debtor failed to maintain and preserve adequate records; and (2) such failure makes it impossible to ascertain the debtor's financial condition and material business practices. *Id.*

Under the former Bankruptcy Act and Bankruptcy Rules then in effect, the burden of persuasion was upon the party objecting to debtor's discharge. *Id.,* 958 F.2d at 1232–33. Although the burden of going forward shifted to the debtor once the creditor made a prima facie showing, the ultimate burden of persuasion remained at all times with the creditor. *Id.,* 958 F.2d at 1233 (citing *In re Decker,* 595 F.2d at 189).

■ The situation is different under the Bankruptcy Code and present Federal Rules of Bankruptcy Procedure. An objecting creditor now is required only to make an initial showing that debtor's books and records are inadequate and that it is not possible to ascertain the debtor's financial affairs. If the creditor makes such a showing, the burden thereafter lies with the debtor to provide justification for the inadequacy. *Id.*

■ It is not relevant whether a debtor intended to conceal his or her true financial condition. All that is required is a showing that debtor unjustifiably failed to keep and maintain adequate records of his or her financial affairs. *Id.,* 958 F.2d at 1234.

■ Plaintiffs' assertion that debtors should be denied a discharge in accordance with § 727(a)(3) is without merit. They have failed to make out a prima facie case that debtors failed to keep and maintain books and records from which their financial condition and business transactions might be determined.

Debtors' records were adequate in light of the relatively uncomplicated nature of their business. After reviewing debtors' books and records, we conclude that a creditor could have relied on them to reconstruct debtors' financial affairs and the history of their business dealings for several years prior to their bankruptcy filing.

Debtors produced ledgers at trial listing Trek's deposits and expenses from 1997 through 2000 as well as their federal income tax returns from 1993 through 1999. These records identify debtors' financial activities with sufficient specificity to make it possible to undertake such a reconstruction.

It is noteworthy in this regard that plaintiffs' counsel refused the offer at trial by debtor Ann Ryan to reconstruct for him the history of debtors' final activities from the ledgers. Counsel obviously recognized that acceptance of her offer would torpedo plaintiffs' case.

In light of plaintiffs' failure to make out a prima facie case that debtors did not keep and maintain adequate records and that it therefore was not possible to reconstruct their financial affairs, it is not neces-

sary to determine whether debtors justified their failure to keep adequate records for this purpose.

Debtors' books and records, in other words, were adequate for purposes of § 727(a)(3).

### § 727(a)(5).

 Section 727(a)(5) functions in tandem with § 727(a)(3). It is designed to foster the same process of investigation and disclosure by requiring a debtor to satisfactorily explain his or her insolvency. *PNC Bank v. Buzelli (In re Buzelli)*, 246 B.R. 75, 116 (Bankr.W.D.Pa.2000).

The creditor need not establish that the debtor acted knowingly or fraudulently in dissipating assets. All the creditor needs to do is to identify missing assets. If the creditor does so, it is incumbent upon the debtor to provide a satisfactory explanation concerning what happened to the assets. *Powers v. Ottoson–King (In re Ottoson–King)*, 3 Fed.Appx. 147, 151 (4th Cir.2001). The explanation must satisfy the finder of fact that a debtor's creditors have no cause to wonder where the debtor's assets went. *Id.*

Debtors concede that the vast preponderance of their assets were "lost" during the year or so preceding their bankruptcy filing. The funds they had received from plaintiffs and from debtor Michael Ryan's father and uncle, which in the aggregate total well in excess of $400,000.00, are not available in this case for distribution to their creditors. Aside from their personal residence with a declared value of $134,000.00, debtors listed assets on their bankruptcy schedules having a total declared value of only $4,440.00. As was noted previously, the chapter 7 trustee reported that this was a no-asset bankruptcy case.

We are satisfied that debtors have explained "where the money went". Debtor Ann Ryan, who kept and maintained debtors' books and records and was responsible for preparing their federal income tax returns, prepared worksheets for trial which were derived from the books and records they kept and which were available to their creditors for inspection.

Earlier we pointed out that plaintiffs' counsel refused debtor Ann Ryan's offer to walk him through debtors' books and records and to show how one could reconstruct their financial affairs for several years into the past. Under questioning from debtors' counsel, she used the work sheets generated from these documents to explain "where the money went". She showed to our satisfaction that the money went to pay debtors' expenses in operating Trek and Martracent.

We conclude in light of the foregoing that the exceptions to discharge found at §§ 727(a)(2)(A), 727(a)(3), and 727(a)(5) do not apply to this case and that debtors therefore should not be denied a discharge.

An appropriate order shall issue.